IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 21, 2005

## JEFFREY WAYNE HAITHCOTE v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Bedford County**
**No. 9934, 9935     Lee Russell, Judge**

---

**No. M2004-02196-CCA-R3-PC - Filed September 2, 2005**

---

The petitioner, Jeffrey Wayne Haithcote, appeals the trial court's denial of post-conviction relief. The single issue presented for review is whether the petitioner was denied the effective assistance of counsel.  The judgment is affirmed.

### Tenn. R. App. P. 3; Judgments of the Trial Court Affirmed

GARY R. WADE, P.J., delivered the opinion of the court, in which JOSEPH M. TIPTON and J.C. MCLIN, JJ., joined.

Andy Myrick Jr., Attorney, Fayetteville, Tennessee for the appellant, Jeffrey Wayne Haithcote.

Paul G. Summers, Attorney General & Reporter; Benjamin A. Ball, Assistant Attorney General; and Michael D. Randles, Assistant District Attorney, for the appellee, State of Tennessee.

### OPINION

On May 8, 2003, police officers observed the petitioner drive a truck along a levy in Shelbyville, maneuver up an embankment, and stop in a parking area near City Hall.  When Officer Tracy Nelson investigated, she smelled alcohol emanating from the inside of the truck and saw a can of beer between the petitioner's legs.  As she examined the petitioner's drivers license, two other officers arrived at the scene.  One of the officers saw that the passenger in the vehicle was in possession of a rock of cocaine.  At that point, the petitioner sped away in his vehicle, striking Officer Nelson as he did so. As a result of the incident, the petitioner was convicted of felony evading arrest and reckless endangerment and he received eight and four year sentences, respectively.  A charge of violation of the open container law resulted in an acquittal.  The petitioner also had pending an unrelated charge of escape wherein he was represented by the same counsel and a fourth charge, wherein he had separate counsel.  The fourth charge was ultimately dismissed by agreement.  Pursuant to the plea agreement on the escape charge, all pending charges were resolved at one time.  The petitioner was sentenced to a consecutive term of four years for the escape.  The effective term for all three sentences was, therefore, sixteen years.  As a part of the agreement, the

petitioner waived his right to appeal the convictions for evading arrest and reckless endangerment.

On May 17, 2004, the petitioner filed this petition for post-conviction relief, challenging his convictions for reckless endangerment and evading arrest on the grounds that he had been denied the effective assistance of counsel. The petitioner specifically alleged that his trial counsel, Russell Leonard, was ineffective for having failed to accept a mistrial offered by the trial judge, for having failed to appeal, for having failed to adequately investigate and prepare for trial, and for having failed to utilize as a defense that he did not "manifest" his vehicle as a deadly weapon. The petitioner also contended that his trial counsel was ineffective for having failed to request recusal of the trial judge, for having failed to review transcripts of the preliminary hearing prior to trial, and for having failed to subpoena a potential witness, James Richardson. He also alleged that his trial counsel failed to determine or raise as a defense whether the petitioner operated his vehicle on a "street, highway, alley, or road," failed to interview witnesses, failed to adequately investigate the police videotapes of the incident, failed to object to the testimony of City Manager, Ed Craig, failed to pursue discovery from the state, and failed to determine the petitioner's proper sentencing range. In a second petition filed the same day, the petitioner alleged that his counsel had also been ineffective as to his guilty plea to felony escape entered on January 26, 2004. He asserted that his counsel had again failed to determine his appropriate range for sentencing purposes, resulting in a Range III sentence as a persistent offender.

At the outset of the evidentiary hearing, the petitioner, who had filed a motion for the recusal of the post-conviction judge who had also presided over the trial, withdrew the request. He then testified that he had employed, rather than appointed, counsel on each of the three charges for which he was convicted. He stated that he was imprisoned in Nashville before trial and his trial counsel was in Winchester, a drive of an hour and fifteen minutes, and that their separation by distance was an obstacle to preparations. The petitioner complained that his trial counsel met with him in Nashville only once prior to trial for about two hours and then only once at the Bedford County Jail for less than an hour on the night before the trial. He believed that his trial counsel should have presented or further developed several defenses, including the claims that he had not driven on a public street or highway, that he had not used or "manifested" his vehicle as a weapon, and that he had driven away from the officers out of necessity. As to the last point, he explained that he feared that his passenger, who was armed with a gun, might become violent with the officers and that he drove away in order to avoid a confrontation. The petitioner acknowledged that the primary strategy of the defense was to utilize the defense of necessity but complained that there should have been alternative defenses and that the failure of his trial counsel to adequately prepare limited the effectiveness of the strategy chosen.

The petitioner acknowledged that he had prior convictions, specifically robbery and burglary, that could have been used for impeachment purposes and that, in consequence, he had chosen not to testify. He complained, however, that his trial counsel should have subpoenaed his bail bondsman, James Richardson, to be a witness at trial in order to establish the defense of necessity. He explained that after his arrest, he had informed Richardson of what had happened and understood that Richardson, despite any rules against hearsay, might be able to give a statement because he was

an "officer of the court." The petitioner claimed that he had told Richardson that he fled from the arresting officers in order to avoid trouble because the passenger in his car had a gun.

The petitioner, who was represented by the public defender's office at the preliminary hearing, was unaware as to whether there was a transcript of the hearing and complained that his trial counsel did not review the audiotapes in advance of the trial. He pointed out that had he reviewed the tapes, his trial counsel would have had the benefit of knowing in advance the testimony of the officers, which, he contended, was in conflict with the testimony provided by the same officers at trial.

The petitioner also contended that his trial counsel had failed to do sufficient research on his prior criminal record and that he had been erroneously classified as a Range III, persistent offender. He insisted that his June 29, 1989, Franklin County convictions for robbery, attempted burglary, and larceny and his June 30, 1989, Bedford County convictions for grand larceny and aggravated assault should have been counted as a single offense because they took place within a twenty-four hour period on October 19 and October 20, 1988. The petitioner also complained that his trial counsel failed to examine a videotape that Officer Tony Collins had taken from his police cruiser and failed to pursue discovery after a written request for the state to produce materials.

As to the "manifestation" defense, the petitioner testified that he "never pointed [his] truck toward the [female officer]" in the sense of using the vehicle as a deadly weapon. He claimed that he was merely using his truck as a means of escape. The petitioner insisted that his trial counsel should have "at least brought [this defense] to the attention" of the jury.

The petitioner also testified that his counsel had informed the jury during closing argument that he decided that the petitioner should not testify. He recalled that afterward, the trial judge, while out of the presence of the jury, ruled that the argument was improper and then offered to declare a mistrial or, in the alternative, reopen the proof and permit the petitioner to testify. The trial judge also gave the petitioner the option of proceeding with the trial. The petitioner stated that he confirmed during a recess that he had chosen on his own accord not to testify at the trial and elected against the acceptance of a mistrial, explaining that his trial counsel believed that he had a strong issue for appeal because the trial court had refused to charge the defense of necessity. The petitioner expressed his understanding that he would have received a new trial had he chosen to accept the offer of mistrial.

Russell Leonard, who was employed as trial counsel only weeks before the trial, testified that he represented the petitioner on the evading arrest and reckless endangerment charges. He stated that the petitioner had initially stated his desire for "a package deal" within a four to six year range and had instructed that he wanted to go to trial if that was not available. Trial counsel testified that the state had offered nothing less than a twelve year sentence partly because of the petitioner's prior convictions from 1988. Trial counsel described the defense theory as primarily one of necessity, that is, that the petitioner had to leave the scene in order to prevent a violent confrontation between his

armed passenger and the police. It was his position, however, that he also raised the "manifestation" defense, wherein the petitioner had not intended to endanger the officer with his truck.

Trial counsel stated that he and the petitioner agreed that because of the petitioner's prior record he could not testify about the necessity defense, which he believed to be the most viable alternative. It was his purpose to try to prove the defense through Chris Hill, the passenger in the vehicle. Counsel explained that the petitioner and his family were unable to assist him in contacting Hill prior to trial and despite his efforts to interview him in advance, he first saw him on the date the petitioner was tried. At trial, Hill acknowledged that he had a gun in his possession at the time the police arrived and that he first displayed the weapon to the petitioner when they were stopped by the police.

Trial counsel acknowledged that he had made a misstatement to the jury regarding whether it was his decision or the petitioner's decision as to whether to testify. He explained that he should have stated that the defendant had "chosen not to testify upon the advice of counsel" and had not done so because of nervousness and concern about the potential outcome of the trial. Trial counsel testified that Hill "was not exactly what I thought was the most convincing of witnesses . . . and . . . I foresaw that we would probably be looking at a conviction." He recalled that when the trial judge offered to declare a mistrial, he discussed three options with the petitioner: (1) accept the mistrial; (2) reopen the proof; and (3) go on with the trial. Trial counsel stated that he suggested that the petitioner proceed with the trial even though a conviction was likely because there was a reasonable chance of success on appeal as to the court's refusal to instruct on necessity. He explained that the proof was strong, that another trial would not change the facts, and that the testimony of Richardson, who the petitioner desired as a witness, was simply not admissible because it did not fall within any permissible exception to rule against hearsay.

Trial counsel also testified that he had told the petitioner that he would represent him on appeal "[b]ecause I thought the necessity charge was something that . . . should have been charged." He explained that he believed the error might qualify the petitioner for a new trial. Trial counsel then stated that after the trial, the petitioner wrote a letter to the trial judge "challenging my competency," which trial counsel considered as an effort to terminate his employment. Trial counsel recalled that there was a hearing on the letter at the same time as the plea submission hearing on the escape charge and that after a "long conversation," an agreement was reached on all pending matters. Trial counsel pointed out that the petitioner had another lawyer "independent of [his] representation" on a fourth charge, which was dismissed. The agreement addressed the length and range of the sentences and the manner of service. Trial counsel confirmed that there was a waiver of the right to appeal on the evading arrest and reckless endangerment convictions as part of that comprehensive plea agreement:

> [B]etween the three of us and our conversations with [the assistant district attorney], in which Mr. Haithcote was extremely active and extremely vocal, Mr. Haithcote made a conscious decision to accept the plea agreement [as to length and range] that was eventually made.

-4-

                    \*                        \*                       \*

> I think the record will reflect that the judge asked Mr. Haithcote if he was doing this freely and voluntarily. If he was under any duress, and Mr. Haithcote indicated that he knew exactly what he was doing.

As to preparations for the trial, trial counsel contended that "we went into everything Mr. Haithcote wanted to discuss." He stated that he had met with the petitioner for two hours at the prison and one hour at the jail before the trial and explained that the "only thing that I never actually had an opportunity to go over" with the petitioner were two videos that were "brought to my attention right before trial." He stated, however, that he did view the videos before trial and determined that they really contained no evidence helpful to the defense. Trial counsel further stated as follows:

> I discussed with Mr. Haithcote either via phone or three-way with Sherr[y] [Haithcote], or . . . by letter or at our individual appearances, just about everything that possibly could have been discussed concerning this case.
> He very meticulously wrote out not only his theory of defense, and what he contends took place, but he has also provided me with . . . [c]ode sections on everything that could possibly have come up during the course of all four of these indictments. . . .
> And I have read every one of those. I've highlighted some of them that I thought were of particular interest. . . .

Trial counsel conceded that he would have been able to communicate more with the petitioner had he been incarcerated in the local jail rather than in prison. He did not, however, believe that the outcome of the trial would have been different had they met more often, pointing out that the defense had insurmountable factual obstacles.

Trial counsel acknowledged that he was unable to acquire the audiotapes of the preliminary hearing. He did, however, claim to have had a lengthy conversation with the petitioner as to what took place during the preliminary hearing and it was his opinion that the testimony of the state witnesses did not change from that hearing to the trial.

Trial counsel also stated that he had filed pre-trial discovery motions wherein he received answers from the state listing the evidence the state intended to produce at trial and also the petitioner's prior criminal record. He also claimed that he had personally investigated the scene of the crime. Trial counsel was not able to state with certainty whether he had spoken with Officer Nelson prior to the trial and apparently did not talk to any of the other witnesses who testified for the state. It was trial counsel's opinion that the video shown at trial was not helpful to the state in that it did not show the petitioner's vehicle actually strike the officer. He implied that this might have assisted in the "manifestation" defense. Trial counsel stated that the video did not indicate

whether the petitioner's passenger, Chris Hill, was in possession of either cocaine or a weapon. According to trial counsel, the probative value of the videotape was that the petitioner's vehicle was driven away from the police officer. A second video reviewed by trial counsel merely recorded some of the conversation between the police as they began pursuit of the petitioner's vehicle. Trial counsel asserted that through one of the state witnesses he was able to elicit testimony that the petitioner was not seen driving on a public road during the course of his escape. While trial counsel hoped the jury might see this testimony as a potential defense, the transcript of the trial established that all of the other state witnesses did place the petitioner's vehicle on a public road.

At the conclusion of the evidentiary hearing, the post-conviction court filed an extensive memorandum opinion denying relief and holding, in summary, as follows:

(1) On May 8, 2003, the petitioner "drove cross-country" along an earthen embankment into the parking area for the City Hall in Shelbyville across from the Bedford County Courthouse. As an officer approached the vehicle, a passenger appeared to have cocaine in his hand so the petitioner sped from the scene, striking an officer as he did so.

(2) During closing argument, trial counsel represented to the jury that it was his decision for the petitioner not to testify at trial. This statement resulted in the trial court offering three alternatives: (a) mistrial, (b) a reopening of the proof with the petitioner allowed to testify, or (c) a continuation of the trial. The petitioner chose the latter course.

(3) Later, at a plea acceptance hearing, the petitioner knowingly and voluntarily waived his right to appeal the evading arrest and reckless endangerment convictions as a part of a plea agreement involving settlement of another case.

(4) The amount of time trial counsel spent in preparation of the case was sufficient given the simplicity of the facts. There was inadequate proof that had more time been spent in preparation, the results would have been different.

(5) The audiotape of the preliminary hearing was blank and there was insufficient proof that inconsistencies between the testimony of the witnesses at the trial and the preliminary hearing would have been helpful for impeachment purposes.

(6) Trial counsel had reviewed police videotape prior to trial and was not ineffective for having failed to adequately investigate in that regard.

(7) Even though trial counsel had failed to interview the witnesses for the state, no prejudice resulted to the petitioner because the witnesses were almost exclusively law enforcement officers whose testimony was in no way helpful to the defense, with the exception of a single officer whose testimony that the petitioner had not driven onto the street before driving back down the embankment was in conflict with the other officers' testimony.

(8) Trial counsel was not ineffective for having failed to discover exculpatory evidence because none was in the possession of the state.

(9) Trial counsel adequately investigated the scene of the incident.

(10) There was no basis to sustain a motion for the recusal of the trial judge.

(11) While it was unclear what the petitioner meant by the "manifestation" defense, there was inadequate proof to establish that trial counsel had been ineffective for failure to pursue other defenses.

(12) Trial counsel was not ineffective for failing to call James Richardson as a defense witness because his testimony would have been inadmissible hearsay.

(13) Because the objection would not have been sustained, trial counsel was not ineffective for having failed to object to the testimony of Shelbyville City Manager, Ed Craig, who testified to the content of a videotape made by a camera mounted in a patrol car.

(14) Trial counsel was not ineffective for having failed to advise his client to accept the offer of mistrial because the petitioner, had he elected to testify, could have been impeached by his prior criminal record and because the state's proof would not have been weaker in the event of a new trial.

(15) Trial counsel was not ineffective for having failed to pursue an appeal because the petitioner knowingly and voluntarily waived his right to appeal by the acceptance of the plea agreement.

(16) Because the petitioner had nine prior felony convictions, he was properly classified as Range III rather than Range II for purposes of sentencing and, moreover, the petitioner failed to establish at the evidentiary hearing that the three convictions arising on October 19, 1988, and the three convictions arising on October 20, 1988, were within twenty-four hours of one another and were part of the same course of conduct; therefore, the petitioner did not establish at the evidentiary hearing that he was prejudiced by any actions on the part of his trial counsel. Further, pursuant to the plea agreement, the state consented to less than the maximum sentences and the petitioner knowingly and voluntarily accepted the Range III classification. As further indication that the plea was knowing and voluntary before acceptance of the plea agreement, the petitioner met with each of his two attorneys and the assistant district attorney for more than two hours.

In a separate order, the post-conviction court denied relief on a post-conviction petition wherein the petitioner alleged that his trial counsel had been ineffective in the escape case in which he had entered a guilty plea and received a Range III, four-year sentence. As in the first case, the petitioner had alleged that his trial counsel was ineffective for having failed to demonstrate that his convictions arising out of incidents on October 19 and October 20, 1988, should have been reduced in number because they were part of the same course of conduct. The post-conviction court, while acknowledging there was a factual dispute between the state and the petitioner before the entry of the plea, determined that the petitioner had knowingly and voluntarily entered a plea of guilty to felony escape and had received a sentence of four years, less than the maximum within the Range III classification.

In this appeal, the petitioner argues that his trial counsel was ineffective for having failed to adequately present the necessity defense at trial, ineffective for having failed to accept the offer of mistrial, ineffective for having failed to adequately prepare for trial, ineffective for not sufficiently

pursuing the "manifestation defense," and ineffective for having failed to establish that the petitioner was less than a Range III, persistent offender based upon his prior criminal record. The state, of course, disagrees.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given were below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693 (1984). The error must be so serious as to render an unreliable result. Id. at 687. It is not necessary, however, that absent the deficiency, the trial would have resulted in an acquittal. Id. at 695. Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457-58 (Tenn. 2001); see also State v. England, 19 S.W.3d 762, 766 (Tenn. 2000).

Under our statutory law, the petitioner bears the burden of proving the allegations in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). Evidence is clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from the evidence. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, the findings of fact made by the post-conviction court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The burden is on the petitioner to show that the evidence preponderated against those findings. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim.

App. 1978). The credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the post-conviction court. Bates v. State, 973 S.W.2d 615 (Tenn. Crim. App. 1997).

I

In his initial argument, the petitioner asserts that trial counsel was ineffective for having failed to persuade the trial court to instruct the jury on the defense of necessity as set out by Tennessee Code Annotated section 39-11-609:

Except as provided in §§ 39-11-611 [through] 39-11-621, conduct is justified if:

(1) The person reasonably believes the conduct is immediately necessary to avoid imminent harm; and

(2) The desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law prescribing the conduct.

Tenn. Code Ann. § 39-11-609 (2003).

The petitioner concedes that before the trial court is required to instruct the jury on the defense of necessity, the facts presented at trial must "fairly satisfy" the elements of the defense. State v. Davenport, 973 S.W.2d 283, 287 (Tenn. Crim. App. 1998). The petitioner bases his claim on appeal on the fact that his trial counsel did not speak to the passenger in the car, Chris Hill, until he was called as a witness at the trial. Testimony offered at trial was as follows:

Q. Did you make [the petitioner] aware of the fact that you had a gun, when you entered his vehicle?

A. Not until the last minute, sir.

        *                   *                   *

Q. What do you mean by "the last minute?"

A. Until we got pulled over.

The petitioner claims that because trial counsel did not go into any further detail and because Hill testified during cross-examination that he had nothing in his hands when the officers first approached the vehicle, the trial court refused to charge the defense of necessity. It is his contention that his trial counsel should have further developed the issue so as to assure that appropriate instructions were provided.

Initially, the petitioner did not claim in his post-conviction petition that his trial counsel was ineffective for having failed to present or adequately develop the defense of necessity. He first made the complaint during his testimony at the evidentiary hearing. In response, trial counsel explained that he had advised the petitioner, who had nine prior felony convictions, not to testify on the necessity defense because the state would impeach his credibility by bringing these offenses to the attention of the jury. Hill testified that he had a weapon and first displayed it to the petitioner when stopped by the police. During closing argument, trial counsel asked the jury to infer from Hill's testimony that the petitioner had fled in order to avoid a violent confrontation with the police. It was

his intention, should the jury return with a verdict of guilt, to appeal and present as error the trial court's refusal to instruct on the potential necessity defense. While that strategy was unsuccessful, it was nevertheless a strategy, one that was altered by the hearing on January 26 that resulted in the petitioner's waiver of his right to appeal as a part of resolving two other pending charges and reaching a compromise sentence with the state. Moreover, that the defendant chose not to testify, even after the trial judge had offered him a second opportunity to do so, suggests that the potential benefit of further developing the defense of necessity was outweighed by the dangers inherent in the petitioner offering himself as a witness. The evidentiary hearing did not, in our view, produce any other evidence to support the necessity defense.

## II

As to the second issue, while trial counsel was deficient for having represented to the jury during closing argument that he had instructed his client not to testify, it does not necessarily follow that he was ineffective for not having insisted that the petitioner accept the offer of mistrial. In a lengthy discussion out of the presence of the jury, the petitioner was offered a mistrial, was offered the opportunity to testify, and was offered the opportunity to proceed with the trial without testifying. The transcript documents the fact that he chose the latter course. It was incumbent upon the petitioner to establish prejudice at the evidentiary hearing. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997); Cooper v. State, 847 S.W.2d 521,527 (Tenn. Crim. App. 1992). That is, if in fact trial counsel had been deficient by having failed to recommend the acceptance of a mistrial, then the state, upon retrial, would have had a weaker case or the defense a stronger one. The petitioner offered nothing at the evidentiary hearing to indicate that any prejudice resulted from the recommendation of his trial counsel to proceed. Had the petitioner chosen to testify, he would have been faced with being cross-examined by a lengthy prior criminal record.

## III

As his next issue, the petitioner argues that his counsel was ineffective for having failed to communicate in person with the petitioner for no more than three hours prior to trial, for having failed to review the tape of the preliminary hearing, for having failed to interview any of the state's witnesses, for having failed to review the police videotapes with the petitioner, and for having failed to interview the primary defense witness, Chris Hill.

The record establishes that trial counsel, on the day before the trial, curtailed his meeting with the petitioner to an hour, explaining that he was having "a bad day." Prior to that, the only direct verbal communication between the petitioner and trial counsel consisted of one other meeting, which lasted two hours, some discussion at court hearings, and a few phone calls. While the level of communication could have, and perhaps should have, been greater, the burden was on the petitioner to demonstrate how the lack of communication affected the results of the trial. He has failed to do that.

Also, although the post-conviction court found little fault with his failure to interview the witnesses for the state or Chris Hill, the primary witness for the defense (who was apparently difficult to locate prior to trial), it is hardly commendable for those omissions to have occurred. The petitioner's liberty was at stake. An understanding of the strength of the state's case and an evaluation of the credibility of the primary defense witness in advance of trial are critical components of an effective preparation. As the post-conviction court pointed out, however, the facts were relatively simple, the preliminary hearing tape was blank, the police videotapes offered little probative evidence, and the petitioner was unable to demonstrate at the evidentiary hearing how a more intensive investigation of the circumstances of the crime might have altered the outcome of the case. See State v. Zimmerman, 823 S.W.2d 220, 225-28 (Tenn. Crim. App. 1991).

Finally, Chris Hill was not called as a witness at the evidentiary hearing. The petitioner claimed that his trial counsel was ineffective for having failed to clarify Hill's testimony regarding when the petitioner was first made aware of the presence of the weapon. In Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990), this court placed the burden on the post-conviction petitioner to produce that testimony which he contends may have been helpful. The same rationale must apply to a witness whose testimony has not been fully developed. The burden is on the petitioner to call the witness at the evidentiary hearing in order to clarify the testimony so that this court need not speculate as to either deficiency in performance or prejudice in result. See Black, 794 S.W.2d at 757. The petitioner did not meet this burden.

IV

As a fourth issue, the petitioner argues that his trial counsel was ineffective by having failed to pursue or further develop his claim that he did not "manifest" his truck as a deadly weapon. He has not, however, supported his claim with any argument or citation to authority. That qualifies as a waiver of the issue. Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."); see also Tenn. R. App. P. 27(a)(7); State v. Hammons, 737 S.W.2d 549, 552 (Tenn. Crim. App. 1987). Moreover, the proof at trial established that the petitioner, while attempting to flee from the police, struck Officer Tracy Nelson with his vehicle. The testimony of the officer was largely uncontested. The petitioner offered nothing at the evidentiary hearing that suggests that his vehicle was not utilized in a manner threatening to the safety of the officer. Under these circumstances, the defense was lacking in merit. Trial counsel can hardly be faulted for having been unable to find evidence to support a defense theory when there was none.

V.

The petitioner's fifth and final complaint is that his trial counsel was ineffective for having allowed him to enter into a plea agreement as a Range III, persistent offender, which requires service of forty-five percent of the sentence prior to release eligibility as to all three convictions. The Range III sentences, each of which was to be served consecutively to the other, were eight years, four years, and four years, for an effective sentence of sixteen years. In order to qualify as a persistent offender,

the petitioner must have five or more prior felony convictions within the conviction class or higher. Tenn. Code Ann. § 40-35-107(a)(1). The statue provides that "acts resulting in bodily injury or threatened bodily injury to the victim or victims shall not be construed to be a single course of conduct." Tenn. Code Ann. § 40-35-107(b)(4). The record establishes that the petitioner presented this issue at his January 26th hearing and, while represented by trial counsel on two of the convictions and by separate counsel on a third charge, chose to accept the offer made by the state. The petitioner accepted a plea agreement that was less than the maximum possible sentence. A compromise was reached. Nothing in this record suggests that the petitioner should have been classified at less than a Range III, persistent offender. The petitioner has not demonstrated prejudice. As to the escape charge, he has been unable to demonstrate that but for the ineffectiveness of his counsel, he would not have pled guilty.

Accordingly, the judgment of the trial court is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE