IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

SEPTEMBER 1997 SESSION

FILED

February 18, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. No. 01C01-9611-CR-00477 |
| Appellee, | * | DAVIDSON COUNTY |
| VS. | * | Hon. Thomas H. Shriver, Judge |
| SCOTTY S. DAVENPORT | * | (Aggravated robbery) |
| Appellant. | * | |

For Appellant:

Jeffrey A. DeVasher
Assistant Public Defender
(on appeal)

James P. McNamara
Assistant Public Defender
(on appeal)

David M. Siegel
Assistant Public Defender
(at trial)

1202 Stahlman Building
Union Street
Nashville, TN  37201

For Appellee:

Charles W. Burson
Attorney General and Reporter

Lisa A. Naylor
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN  37243-0493

Nick Bailey
Assistant District Attorney General

Isabel Maumus
Assistant District Attorney General
Washington Square, Suite 500
222 2nd Ave., North
Nashville, TN  37201-1649

OPINION FILED:_____

AFFIRMED

GARY R. WADE, JUDGE

## OPINION

The defendant, Scotty S. Davenport, appeals from his conviction of aggravated robbery. The trial court imposed a Range I sentence of eight years. In this appeal of right, the defendant presents the following issues for our review:

(1) whether the evidence was sufficient to support his conviction;

(2) whether the trial court erred by denying the defendant's request for a special jury instruction on the defenses of necessity and duress.

We find no error and affirm the judgment of the trial court.

At about 1:00 A.M. on July 10, 1995, Mitchell Abbott, a cash register clerk at a Mapco store in Madison, was preparing to close for the day. As he attempted to lock the doors, someone pushed through the doors and knocked him backwards. His assailant's face was partially covered with a cloth, but Abbott could see his eyes and the top of his head. When asked what he wanted, the assailant pointed towards the cash register and then back at Abbott with his covered, outstretched hand, which looked "like he had something in [it]." Abbott, who initially was unsure whether his assailant was armed, handed over a bag containing fifty to seventy-five dollars in cash and twenty or thirty dollars in food stamps, "so nobody would get hurt." Abbott testified that he thought the assailant had a gun but conceded that he never actually saw a weapon.

Officer Tony Turner, a patrolman with the Nashville Metro Police Department, responded to a radio report of a robbery at the Mapco in Madison and interviewed Abbott. He recalled that Abbott described his assailant as having an orange cloth around his hand and an object that could have been a handgun. Officer Turner was given a detailed description of the suspect.

2

On the next day, Metro Police Officer Marshall Stanton, who was a childhood friend of the defendant, received a telephone message on his answering machine from the defendant, who said he was "in a bad way and ... thinking about getting ... the police to come to his house."  The defendant left word that he intended to arm himself and step outside so officers would shoot him.  The defendant directed Officer Stanton "not to come down" to his residence.  After hearing the message, Officer Stanton had begun his work shift when he received a report to drive to the defendant's address.  The defendant's ex-wife had called the police to report that the defendant was suicidal.  When Officer Stanton arrived at the scene, another officer was talking with the defendant by telephone.  The defendant then saw Officer Stanton and agreed to be handcuffed and driven to Vanderbilt Hospital for emergency treatment.

En route, the defendant volunteered information to Officer Stanton that he had committed the robbery at the Mapco the previous night.  The defendant explained that he had used crack cocaine heavily for two months and had entered the store with a handkerchief or rag over his hand before demanding money.  The defendant explained that he used the robbery proceeds for a crack purchase at the Rio Vista Apartments but that the dealer substituted a piece of wax.  Officer Stanton reported the incident to Detective Jeff Nidiffer of the armed robbery division, who traveled to the hospital to question the defendant.  The defendant repeated his confession.  After a Vanderbilt physician determined that the defendant did not need to be hospitalized but did require drug treatment, the defendant was taken into custody.

Later, Detective Nidiffer videotaped another incriminating statement by the defendant.  The tape, which was played for the jury at trial, contained a

3

statement by the defendant that he had been high on cocaine and without sleep for six days leading up to the robbery. He admitted waiting in his vehicle, placing a cloth around his face and another cloth around his hand and pointed finger. He then entered the store and announced, "This is a robbery." The defendant told officers that the clerk unlocked the door and gave him the cash and food stamps from the register.

Ms. Shirley Janes, the Assistant Manager of the Mapco store and Abbott's co-worker, testified on behalf of the defense. While not present when the store was robbed, she knew the defendant as a frequent customer. Ms. Janes recalled that a few days after the robbery, Abbott reported to her that he was outside the store, which was against store policy, when first approached by the defendant. Ms. Janes recalled that Abbott had not mentioned that the defendant was armed and had referred to him as "my friend." She testified that she had never felt threatened when the defendant had been in the store on other occasions.

The forty-three-year-old defendant testified that he had worked as a drywall finisher for twenty-eight years and could neither read nor write. He admitted that he had abused alcohol since the age of fifteen; although he had successfully quit drinking for a twelve year period, he had struggled with alcohol and a drug addiction for the past three years since his mother's death. The defendant recalled that when her doctors informed him that she had only six weeks to live, he begun to use cocaine because "I wanted to die with her." The defendant testified that he had relied on his mother for the paperwork required for his work and, after her death, he could no longer work because of his cocaine habit and his illiteracy. He added that a muscle condition, for which he receives approximately four hundred dollars a month in benefits, was also a disability. The defendant testified that he drove drug

4

dealers from one place to another in order to support his habit. According to the defendant, who is divorced, his daughter, who lived with her children at Rio Vista Apartments, became involved with the dealers and owed them money. When she did not pay, the dealers threatened her children. He claimed that he turned to robbery so that the dealers would not take the "kids out one at a time."

The defendant claimed that he had been robbed at gunpoint by these dealers two months before the robbery. He had participated in a shoot-out with these dealers in late June. On both occasions he made reports to the police. He contended that a few days before the robbery, these dealers insisted on money from the defendant's daughter else they would take her children. The defendant testified that he had no other choice but to commit the Mapco robbery. He recalled that the clerk laughed at the time, placed the cash into a paper bag, and then asked him if he wanted the change too. The defendant claimed the clerk knew there was no gun.

The defendant testified that when he returned to Rio Vista Apartments with the money, none of the dealers would take the money. He contended that he eventually went to the kingpin, who took the money, gave the defendant a piece of wax fashioned to look like rock cocaine, and promised to "take care of them for you." The defendant recalled at trial that he slept several hours before instructing his ex-wife to remove the children from the house because he intended to commit suicide. He remembered placing the call to Officer Stanton and later surrendering to him. The defendant explained that he did not tell Officer Stanton or Detective Nidiffer about the threats against his grandchildren because he did not want them to think his daughter was on drugs. He claimed that the robbery proceeds were used

5

to protect his grandchildren.  The defendant then expressed remorse for his actions and asserted that he had successfully completed a drug rehabilitation program.

Ronnie McEwing testified that the defendant contacted him in June of 1995 and asked him for eight hundred dollars.  He recalled the defendant saying that his daughter and grandchildren were in trouble down at the Rio Vista Apartments; he was not, however, told that their lives were in danger.

Baptist minister Larry Graves, a brother-in-law to the defendant, testified that in June and July of 1995, the defendant asked him for money.  He recalled the defendant's claim that he needed money to pay a drug debt and that he and his family were being threatened.  Graves said he refused to give the defendant money because he was not sure he was being truthful and did not want the defendant to buy drugs.  In July of 1995, Graves learned that the defendant had been involved in a shooting.  He learned that he defendant had fled Knoxville to escape threats against his life.  On cross-examination, Graves admitted that he was unaware of any claims of threats against the defendant's grandchildren until after the robbery and his arrest.

I

The defendant first challenges the sufficiency of the evidence.  On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom.  State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).  The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as triers of fact.  Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978).  When the sufficiency of the evidence is challenged, the

relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983); Tenn. R. App. P. 13(e).

Aggravated robbery, a Class B felony, is "robbery ... [a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon...." Tenn. Code Ann. § 39-13-402(a). Robbery is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). A theft is committed when a person, "with intent to deprive the owner of property, ... knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103. A person acts intentionally, "when it is the person's conscious objective or desire to engage in the conduct or cause the result." Tenn. Code Ann. § 39-11-302(a). A person acts knowingly as to conduct or circumstances "when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result ... when the person is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-302(b).

The defendant specifically contends that the evidence did not establish that he used a deadly weapon or any article intended to make the victim reasonably believe he was carrying a deadly weapon. The jury, however, accredited the testimony of Abbott and rejected the claim of the defendant. There was proof that the defendant sat in his car and planned his robbery. He waited for other cars to leave the area. Then, he covered his face with a cloth to disguise himself and fashioned a rag upon his hand in an effort to lead Abbott to believe he held a

7

weapon. The defendant also pushed his way into the store by force and announced "a robbery." Abbott stated his belief that the defendant was armed.

In our view, the defendant's actions were clearly knowing and could reasonably be found to have been intentional. We cannot say that the proof was insufficient to establish every element of aggravated robbery. Under these circumstances, a rational trier of fact could have easily concluded that the crime was committed by the defendant beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979).

II

Next, the defendant challenges the accuracy of the jury instructions. He specifically argues that the trial court erred by rejecting instructions on the defenses of necessity and duress. The state, however, disagrees on the basis that neither defense is applicable to the facts of this case.

Initially, we point out that the trial judge has the duty to give a complete charge of the law applicable to the facts of the case. State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986). The instructions should include a charge on the defense of necessity or duress if the facts would fairly support either. As necessity and duress are not classified by our code as affirmative defenses, the defendant need not prove them by a preponderance of the evidence. State v. Culp, 900 S.W.2d 707, 710 (Tenn. Crim. App. 1994). Where the proof, however, "fairly raises" the defense, the trial court "must submit the defense to the jury and the prosecution must 'prove beyond a reasonable doubt that the defense does not apply.'" Id. (quoting State v. Hood, 868 S.W.2d 744 (Tenn. Crim. App. 1993)). The test for whether a special instruction must be given is whether "there is any evidence which reasonable minds

8

could accept as to any such [defense] ...." <u>Johnson v. State</u>, 531 S.W.2d 558, 559 (Tenn. 1975).

We first address the requirement of an instruction on the defense of necessity. Necessity is a defense wherein conduct, otherwise unlawful, is justified if: "(1) The person reasonably believes the conduct is immediately necessary to avoid imminent harm; and (2) The desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct." Tenn. Code Ann. § 39-11-609. The Sentencing Commission Comments to this section state that the defense of necessity is applicable in exceedingly rare situations where criminal activity is "an objectively reasonable response to an extreme situation." The Sentencing Commission provides an example as follows: "[T]he necessity defense would bar a trespass conviction for a hiker, stranded in a snowstorm, who spends the night in a vacant cabin rather than risking death sleeping in the open."

Necessity has traditionally been used appropriately when the extreme situation is brought on by something other than a human act. Neil P. Cohen, et al., <u>Prevalence and Use of Criminal Defenses: A Preliminary Study</u>, 60 Tenn. L. Rev. 957, 966 (1993). Examples of necessity include a ship violating an embargo law to avoid a storm, a pharmacist providing medication without a prescription to alleviate someone's suffering during an emergency, or where two sailors are shipwrecked and one pushes the other off the float to save his own life. 11 David L. Raybin, <u>Tennessee Practice</u> § 28.118 (1985 & Supp. 1997) (citations and footnotes omitted). Moreover, necessity requires an immediately necessary action, justifiable because of an imminent threat, where the action is the only means to avoid the harm. <u>Id.</u>; <u>see also</u> <u>State v. Green</u>, 915 S.W.2d 827, 832 (Tenn. Crim. App. 1995)

9

(trial judge would be prudent to instruct jury on necessity and duress where father's testimony raised a sufficient question of fact as to either defense; father had agreed to participate in a burglary only because his son was directly threatened with harm if the father refused).

Failure to charge the jury as to the defense of necessity can be reversible error where the facts fairly satisfy the elements. State v. Bobby Ray Jenkins, C.C.A. No. 03C01-9202-CR-00050 (Tenn. Crim. App., at Knoxville, Sept. 18, 1992).  In Jenkins, a police officer found the defendant in a vehicle stopped in the middle of the road; the defendant was in the driver's seat and the motor was running.  The defendant, who was intoxicated, had no driver's license, and had been previously convicted as a motor vehicle habitual offender, was arrested and again convicted under the Motor Vehicle Habitual Offenders Act. Id., slip op. at 2.  He had presented proof at trial that the car's transmission had malfunctioned and his friend, who had actually been driving, had left the scene to get help.  The defendant had to keep his foot on the brake pedal to prevent the car from rolling down hill and needed the engine running to operate the power brake systems.  On appeal, a panel of this court found the defense witnesses were consistent and the defendant's testimony corroborated them. Id., slip op. at 7.  The court ruled that the defendant had fairly raised a necessity defense and it was reversible error for the trial judge not to charge it to the jury. Id., slip op. at 8.

Initially, we point out that the defendant's trial testimony and his pre-trial statements were contradictory.  The defense witnesses were marginally corroborative.  During his taped confession and in his statement to Officer Stanton in the patrol car, the defendant claimed he had robbed the store to get drugs for himself, having used cocaine heavily for two months and having gone without sleep

10

for six consecutive days. He made no mention to Officer Stanton or Detective Nidiffer that his family had been threatened. Moreover, the defendant has failed to demonstrate that the threat was imminent, requiring immediate action on his part. While defense witnesses recalled the defendant's claim that he or his family had been threatened only days or weeks before the crime, Graves testified that he did not learn of the actual threats against the defendant's grandchildren until after the robbery. Finally, the defendant has not provided proof tending to show that aggravated robbery was the only alternative available. There was testimony that he received disability benefits every month and owns a car; thus, there were lawful avenues for obtaining some fifty dollars owed by his daughter. He did not explain that he could not remove the children from that environment to his own residence. So, even if the defendant's proof was true, he has not established the essential elements of necessity.

Next, we turn to the defendant's request for an instruction on duress. This defense is defined as follows:

> (a) Duress is a defense to prosecution where the person or a third person is threatened with harm which is present, imminent, impending and of such a nature to induce a well-grounded apprehension of death or serious bodily injury if the act is not done. The threatened harm must be continuous throughout the time the act is being committed, and must be one from which the person cannot withdraw in safety. Further, the desirability and urgency of avoiding the harm must clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct.

Tenn. Code Ann. § 39-11-504. The Sentencing Commission Comments to this section advise that the duress defense requires that the offense must be committed because another person threatens death or serious bodily injury if the offense is not committed. There must be no reasonable means to escape the compulsion to

11

commit the offense. <u>See</u> <u>State v. Robinson</u>, 622 S.W.2d 62, 73 (Tenn. Crim. App. 1980).

The defendant argues that the trial court was required to instruct the jury on duress. Again, he claims that his motivation to rob the store was solely to obtain money to alleviate a threat of death to his grandchildren. The defendant insists that this threat was continuous and harm to the children imminent. Although he knew it was wrong to rob a store, the defendant believed obtaining money to pay off the dealers and alleviate the threat to his grandchildren outweighed the harmfulness the robbery statute was designed to protect.

We disagree. By the uncontested proof, there were other alternatives available to the defendant other than commission of this offense. No one threatened the defendant or a third person with harm if he did not commit the robbery. Thus, duress is not fairly raised by the proof and the trial court did not err in refusing to give the special instruction.

Accordingly, the judgment of the trial court is affirmed.

_____
Gary R. Wade, Judge

CONCUR:


_____
Thomas T. Woodall, Judge


_____
Curwood Witt, Judge