# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

## FEBRUARY SESSION, 1999

FILED

June 2, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | **)** | **C.C.A. NO. 03C01-9712-CC-00530** |
| | **)** | |
| Appellee, | **)** | |
| | **)** | |
| | **)** | **SEVIER COUNTY** |
| **VS.** | **)** | |
| | **)** | **HON. REX HENRY OGLE** |
| **TERRY PROFFITT,** | **)** | **JUDGE** |
| | **)** | |
| Appellant. | **)** | **(Direct Appeal - First Degree Murder)** |

FOR THE APPELLANT:

JAMES W. GREENLEE
118 Bruce Street
Sevierville, TN  37862

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

MICHAEL J. FAHEY, II
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN  37243

AL SCHMUTZER
District Attorney General

CHARLES ATCHLEY
Assistant District Attorney
Sevier County Courthouse
Sevierville, TN  37862

OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# OPINION

On October 7, 1996, the Sevier County Grand Jury indicted Appellant Terry Proffitt for one count of first degree murder. After a jury trial held on September 24–26, 1997, Appellant was convicted of first degree murder and was sentenced to life imprisonment. Appellant challenges his conviction, raising the following issues:

> 1) whether the trial court erred when it excluded an expert opinion that Appellant lacked the ability to "knowingly" kill the victim; and
> 2) whether the trial court erred when it when it refused to instruct the jury that the doctrine of diminished capacity applies to the requisite mental states for both first degree and second degree murder.

After a review of the record, we affirm the judgment of the trial court.

## I. FACTS

On June 6, 1996, Appellant killed his ex-wife, Kimberly Proffitt, by shooting her two times with a Marlin 45/70 lever action rifle. When questioned by police later that night, Appellant stated that he and Ms. Proffitt had gotten into an argument after Ms. Proffitt had mentioned her boyfriend. Appellant stated that he then grabbed his rifle, which he believed was unloaded, in an attempt to scare Ms. Proffitt. Appellant stated that the rifle had fired accidentally when Ms. Proffitt pulled it. Appellant also testified that the rifle fired a second time while Ms. Proffitt was still pulling it.

Agent Dan Royce of the Tennessee Bureau of Investigation testified that in order to fire Appellant's rifle, the lever would have to be worked and then the

trigger would have to be pulled. Agent Royce also testified that in order to fire a second shot, either the lever would have to be worked again or the hammer would have to be manually cocked and in either case, the trigger would have to be pulled again. Agent Royce testified that the rifle could not fire merely from being grabbed unless the trigger was pulled at the same time.

Doctor Cleland Blake testified that when he examined the body of Ms. Proffitt, he discovered that she had bruises and cuts on her right hand. Dr. Blake testified that these wounds were defensive wounds that were likely caused while Ms. Proffitt was holding the rifle and someone pulled it away from her. Dr. Blake also testified that it would have been impossible for Ms. Proffitt to have still been holding the rifle when the second shot was fired.

J.R. Cantrell testified that approximately three weeks before the shooting, Appellant told Cantrell that he had become upset with Ms. Proffitt and he had considered shooting her. Cantrell also testified that approximately one to two weeks before the shooting, Appellant told Cantrell that it would be better if Ms. Proffitt was dead and someone else was raising their children.

Donald Ogle testified that in September of 1995, he saw Appellant grab Ms. Proffitt by the hair, pin her against a cabinet door, and put a knife to her throat. Donald Ogle also testified that in October of 1995, he saw Appellant hold a gun in Ms. Proffitt's mouth. Donald Ogle further testified that when he called Appellant's residence one week before the shooting and asked Appellant where Ms. Proffitt was residing, Appellant told him where Ms. Proffitt was living and then stated, "but she's not going to live anywhere long."

Johnny Ogle testified that three days before the shooting, Appellant stated that "he ought to bust a cap" on Ms. Proffitt, which Johnny Ogle understood to mean that Appellant ought to shoot Ms. Proffitt.

Johnny Costner testified that four days before the shooting, Appellant told Costner that he was going to kill Ms. Proffitt. Costner also testified that two days before the shooting, Appellant told Costner that he had thought about killing Ms. Proffitt "all day long."

Doctor Michael Smith testified that in his opinion, Appellant suffered from "a major depression of severe to psychotic proportions" that rendered Appellant incapable of either premeditating the shooting or forming an intent to kill. Dr. Smith admitted, however, that if a person stated that he or she was going to kill another, that could be evidence of an intent to kill. Dr. Smith also admitted that if a person stated that he or she had been thinking about killing another for a long period of time, that could also be evidence of an intent to kill. In addition, Dr. Smith admitted that if a person had made up a story in order to avoid responsibility for a killing, that could be evidence that the person was capable of forming an intent to kill.

In a jury out hearing, Dr. Smith testified that in his opinion, Appellant's mental condition rendered him incapable of "knowingly" killing Ms. Proffitt. However, the trial court ruled that this testimony was inadmissible. The trial court based this ruling on its determination that the doctrine of diminished capacity only applied to first degree murder charges and was inapplicable to second degree murder charges. Thus, the trial court ruled that Dr. Smith could testify that

-4-

Appellant did not have the ability to premeditate or form the intent to kill, but Dr. Smith could not testify that Appellant did not have the ability to "knowingly" kill.

At the close of trial, Appellant submitted a special jury request for an instruction on diminished capacity. This proposed instruction stated, in relevant part, that if the jury concluded that Appellant's diminished capacity rendered him incapable of having the requisite mens rea for either first degree murder or for second degree murder, the jury must find him not guilty of those offenses. The trial court rejected this instruction and instead, the court instructed the jury that if it concluded that Appellant's diminished capacity rendered him incapable of acting intentionally or with premeditation, then it must find him not guilty of first degree murder.

## II. EXPERT TESTIMONY

Appellant contends that the trial court erred when it refused to permit Dr. Smith to testify that Appellant did not have the ability to "knowingly" kill. The State concedes that the trial court erred, but maintains that it was harmless error under the circumstances.

Approximately three months after Appellant's trial, the Tennessee Supreme Court addressed the issue of diminished capacity in State v. Hall, 958 S.W.2d 679 (Tenn. 1997). The supreme court stated:

> [T]o gain admissibility, expert testimony regarding a defendant's incapacity to form the required mental state must satisfy the general relevancy standards as well as the evidentiary rules which specifically govern expert testimony. Assuming that those standards are satisfied, psychiatric evidence that the defendant lacks the capacity, because of mental disease

or defect, to form the requisite culpable mental state to commit the offense charged is admissible under Tennessee law.

Id. at 689. The supreme court made no distinction between the application of the doctrine of diminished capacity to first degree or second degree murder charges. Indeed, this Court has previously stated that

> Although not explicitly addressed, the Hall opinion apparently did not limit application of the doctrine to specific intent crimes, as this Court implied in [State v. ]Phipps, 883 S.W.2d [138,] 149 n. 19 (declining to decide whether diminished capacity negates mental states other than specific intent). We believe this is implicit in the court's repeated statements that diminished capacity is relevant to negate the requisite culpable mental state, not just premeditation and deliberation. Hall, 958 S.W.2d at 690 (emphasis added). Moreover, the distinction between general and specific intent crimes has been abandoned in our criminal code. Tenn. Code Ann. § 39-11-301 (Sentencing Commission Comments).

State v. Calvin Lee Sneed, No. 03C01-9611-CR-00444, 1998 WL 309137, at *13 n.9 (Tenn. Crim. App., Knoxville, June 12, 1998). Because the doctrine of diminished capacity applies to all offenses in which the State is required to prove a specified mens rea, we conclude that the trial court should have allowed Dr. Smith to give his opinion that Appellant's mental condition rendered him incapable of "knowingly" killing Ms. Proffitt.[1] However, we agree with the State that the trial court's error was harmless under the circumstances of this case.

In this case, the jury heard Dr. Smith's opinion that Appellant suffered from "a major depression of severe to psychotic proportions" that rendered Appellant incapable of either premeditating the shooting or forming an intent to kill. The jury obviously rejected Dr. Smith's opinion and concluded that Appellant had committed a premeditated and intentional killing. Indeed, there was ample evidence upon which a rational jury could base this conclusion. It is

---

[1] There is no dispute that Dr. Smith's opinion satisfies the general standards of relevancy as well as the rules of evidence that govern expert testimony.

-6-

inconceivable that a rational jury, having concluded that Appellant had committed an intentional and premeditated murder, could also conclude that Appellant had not acted "knowingly." Such a conclusion would defy all logic. Therefore, it is obvious that even if Dr. Smith had been allowed to testify that Appellant's mental condition rendered him incapable of a "knowing" killing, the jury would have rejected that opinion just as it rejected the opinion that Appellant could not kill intentionally or with premeditation. Thus, we conclude that the trial court's error in limiting the expert testimony was harmless. See Tenn. R. App. P. 36(b). This issue has no merit.

## III. JURY INSTRUCTIONS

Appellant contends that the trial court erred when it refused to instruct the jury that the doctrine of diminished capacity applies to the requisite mental states for both first degree and second degree murder. The State concedes that the trial court erred, but contends that the error was harmless.

Initially, we note that the trial court "has the duty to give a complete charge of the law applicable to the facts of the case." State v. Davenport, 973 S.W.2d 283, 287 (Tenn. Crim. App. 1998). As previously stated, the doctrine of diminished capacity as it applies to both first degree and second degree murder was applicable to the facts of this case. Thus, the trial court erred when it failed to instruct the jury that it should consider whether Appellant's mental state rendered him incapable of having the requisite mental state ("knowing") for second degree murder. However, we agree with the State that this was harmless error.

This issue is somewhat analogous to the issue presented in the case of State v. Williams, 977 S.W.2d 101 (Tenn. 1998). In Williams, the Tennessee Supreme Court held that the trial court's failure to instruct the jury on the lesser offense of voluntary manslaughter was harmless when the jury convicted the defendant of first degree murder after it had been instructed on both first degree and second degree murder. Id. at 106. The supreme court stated:

> By convicting the defendant of first degree murder the jury determined that the proof was sufficient to establish all the elements of that offense beyond a reasonable doubt, including that the killing was "intentional, deliberate and premeditated." In other words, by finding the defendant guilty of the highest offense to the exclusion of the immediately lesser offense, second degree murder, the jury necessarily rejected all other lesser offenses, including voluntary manslaughter. Accordingly, the trial court's erroneous failure to charge voluntary manslaughter is harmless beyond a reasonable doubt because the jury's verdict of guilt on the greater offense of first degree murder and its disinclination to consider the lesser included offense of second degree murder clearly demonstrates that it certainly would not have returned a verdict on voluntary manslaughter.

Id. Similarly, the jury's rejection of Dr. Smith's opinion that Appellant could not kill intentionally or with premeditation indicates that it certainly would have rejected Dr. Smith's opinion that Appellant could not "knowingly" kill. There is no question that "intentional" and "premeditation" are "greater" mental states than "knowing." For instance, "'[i]ntentional' refers to a person who acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result." Tenn. Code Ann. § 39-11-302(a) (1997). In addition, "'premeditation' is an act done after the exercise of reflection and judgment." Tenn. Code Ann. § 39-13-202(d) (Supp. 1998). Further, "'[k]nowing' refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the

person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-302(b) (1997). By convicting Appellant of first degree murder, the jury found beyond a reasonable doubt that Appellant had killed intentionally and with premeditation. In finding that Appellant acted with these higher mental states, the jury necessarily rejected all other lesser mental states. Thus, the jury clearly would not have found that Appellant had been incapable of "knowingly" killing. Therefore, we conclude that the trial court's erroneous failure to instruct the jury that the doctrine of diminished capacity could negate the requisite mental state for second degree murder is harmless beyond a reasonable doubt. See Tenn. R. App. P. 36(b). This issue has no merit.

Accordingly, the judgment of the trial court is AFFIRMED.

_____
JERRY L. SMITH, JUDGE

CONCUR:

_____
GARY R. WADE, PRESIDING JUDGE

_____
L. T. LAFFERTY, SENIOR JUDGE