IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
May 30, 2019 Session[1]

## STATE OF TENNESSEE v. BRANDON COLE-PUGH

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Madison County**
**No. 16-109   Donald H. Allen, Judge**

_____

### No. W2017-00469-SC-R11-CD

_____

The defendant, Brandon Cole-Pugh, was convicted of being a felon in possession of a handgun, in violation of Tennessee Code Annotated section 39-17-1307(b)(1).   The evidence presented at trial suggested that the defendant obtained a handgun during a physical altercation, during which the handgun became loose, fell from another individual's possession, and dropped to the floor.  Prior to the trial court's instructions to the jury, defense counsel orally requested an instruction on the defense of necessity.  The trial court denied the request.  Based upon the evidence presented at trial, the briefs of the parties, the arguments of counsel, and the applicable law, we hold that the defense of necessity was fairly raised by the evidence and that the trial court erred in refusing to instruct the jury accordingly.  We further hold that Tennessee law does not preclude plenary review of a claim of error based on a trial court's failure to instruct the jury on a general defense when the request was not made in writing.  We, therefore, reverse the judgment of the Court of Criminal Appeals and remand this case to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal**
**Appeals Reversed; Case Remanded to the Trial Court**

ROGER A. PAGE, J., delivered the opinion of the court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK, SHARON G. LEE, and HOLLY KIRBY, JJ., joined.

Daniel Taylor, Jackson, Tennessee (at trial); and Lance R. Chism, Memphis, Tennessee (on appeal), for the appellant, Brandon Cole-Pugh.

---

[1] We heard oral argument on the campus of Lipscomb University in Nashville, Davidson County, Tennessee, as part of the American Legion Auxiliary Volunteer Girls State S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

Herbert H. Slatery III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; Jonathan David Shaub, Assistant Solicitor General; Jody S. Pickens, District Attorney General; and Aaron Chaplin, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## I. FACTS

Zaid Alshaif was the owner/manager of The Gold Line Market and convenience store in Jackson, Tennessee. In the early morning hours of November 22, 2015, Mr. Alshaif was summoned to the store by one of his employees, Hassan Hamd, who reported that a fight had erupted and had ended in a shooting. When Mr. Alshaif arrived at the store, he witnessed the destruction that had occurred as a result of the struggle. Law enforcement officers responded to the scene and asked to view the video camera recordings. Mr. Alshaif maintained sixteen cameras in and around the store, and he provided officers with copies of the recordings from all of them.

Jackson Police Officer Paul Bozza responded to a "shots fired" call at the store. Upon arrival, he was advised that a female, Antalisha Jeter, had been shot, and he rendered aid until an ambulance arrived. After assisting the injured woman, Officer Bozza asked the defendant to remain at the scene while Officer Bozza watched the video recordings from the store cameras. In the video, the defendant could be seen holding a firearm. Based upon his prior knowledge, Officer Bozza knew that the defendant was a convicted felon, but he verified the defendant's status on the crime portal.

After watching the video, Officer Bozza questioned the defendant and asked where he had placed the gun because the defendant no longer had possession of it. The defendant said that "he didn't have a gun." The defendant was ultimately arrested, but the officers did not find the weapon on his person or in the vehicle in which Ms. Jeter had been sitting.

At trial, Officer Bozza narrated the video as it was played for the jury. The video showed the defendant walking toward the store, holding what was presumably a cellular telephone in one hand. He did not appear to be carrying a weapon at that point. There was a large crowd gathered in the store. The defendant put his telephone away as several people began backing up and "crowding" in front of the store. The defendant nonetheless entered the store where a physical altercation ensued.

Officer Bozza described the fight that occurred inside the store, which involved the defendant and another individual who was unknown to the officer. The defendant was on the ground at one point but thereafter exited the store holding a silver pistol, pointed down, in his right hand. Other people could then be seen running from the store, but the defendant attempted to walk back inside with the gun.[2] Before the defendant could enter the store, he engaged in "some kind of little standoff" with another man, who was also armed. The video recording also showed Ms. Jeter, the defendant's girlfriend, attempting to pull the defendant toward the car. It is unclear whether the defendant still had possession of the weapon at that time. A man[3] wearing a gray jacket and a "skull cap" approached them, pointed a weapon in their direction, and fired two rounds, striking Ms. Jeter in the leg. At no point during these events did the defendant point the weapon toward any person. There was no testimony or evidence that the defendant had ever fired the weapon.

The parties stipulated that the defendant previously had been convicted of a felony involving the attempted use of force, violence, or a deadly weapon. The State then rested its case-in-chief.

Michael Douglas had also been present at the Gold Line Market and witnessed the events in question. He had driven his own vehicle to the market and saw the defendant and Ms. Jeter when he arrived. Mr. Douglas recalled that when they arrived, a "commotion" was occurring inside the store. The defendant asked a female witness, Ms. Thomas, what was going on. Ms. Thomas and two men were having a disagreement and had begun to argue. After the defendant asked Ms. Thomas what was happening, one of the men approached the defendant and "took a swing at him." The man and the defendant began "tussling," and a gun fell out of the other man's jacket. Although Mr. Douglas did not know the identity of the other man, he recognized the man from the video as the one wearing a gray jacket. According to Mr. Douglas, a fight ensued, but the defendant was merely trying to defend himself.

---

[2] Although he equivocated during cross-examination regarding his degree of certainty that the defendant, in fact, possessed a firearm, Officer Bozza stated clearly, "He's got a pistol, silver pistol beside his side, and he's trying to go back into the store."

[3] Officer Bozza did not know the identity of the other man involved in the incident, but witnesses provided his identity, and the man was ultimately charged with a criminal offense as a result of his involvement. During the incident, a second victim, Michael Douglas, was also shot.

Mr. Douglas tried to get to the middle of the fight to break it up, but other people surrounded the fight. The man who had originally possessed the gun and a friend of his both attempted to reach the gun, but the defendant grabbed it first. After the defendant obtained the weapon, the man with whom he had been fighting stood up and ran out of the store. The defendant also arose and walked outside carrying the downward-pointed gun; he never pointed it at anyone. Mr. Douglas said that when the defendant walked back inside the store and exited again, he did not appear to have possession of the gun anymore.

In the meantime, Mr. Douglas approached the other man, with whom he was familiar, and said that they should all go. They shook hands and Mr. Douglas began to walk toward the defendant's vehicle. He did not see a gun in the defendant's hand at that point. Soon thereafter he heard gunshots and discovered that Ms. Jeter had been shot in the thigh. Mr. Douglas attempted to help her into the vehicle when he was shot in the back. Mr. Douglas was unaware of whether the defendant attempted to further assist Ms. Jeter because Mr. Douglas "got right back up[,] hopped in the car[,] and sped off trying to go to the hospital." He drove away from the scene, parked in an adjacent parking lot, and awaited medical assistance.

Thereafter, the defense rested its case. The State did not present any rebuttal. The jury was excused, and the trial court conferred with the attorneys about the jury instructions. Defense counsel requested an instruction on the defense of necessity. As grounds therefor, counsel argued:

> I would say that this has been raised by the proof of Mr. Douglas. It's a defense to the offense charged, if the Defendant acts -- reasonably believed that the conduct was imminently necessary to avoid immediate harm and the desirability or urgency avoiding the harm clearly outweighed according to ordinary established standards of reasonableness, the harm sought to be prevented by the law pr[o]scribing the conduct.
>
> Clearly what we have is a situation where there is a fight. What we heard from the proof is the issue that, you know, my client didn't start the fight[ ] . . . .
>
> . . . .

You have proof that a fight occurred, and my client obviously, according to the officer's testimony, Mr. Douglas' testimony involved he's being hit, he's being fought, other -- the people are attacking him, he's -- he's defending himself, but at -- at some point, the gentleman that my client's fighting with, a pistol falls out on the ground. You've heard proof that the other individual in the fight with my client is reaching towards the gun, and this other individual's reaching for the gun, and which my client, it's -- it came from the gentleman in the black coat or black pants, not my client, and to prevent the others from grabbing the gun and doing any harm or potential harm, that's when my client reaches and grabs the gun.

And I will submit that the proof shows that it raises the issue, the gun's down to his side. He doesn't employ the gun. He doesn't point the gun from what we've heard from the proof, and he believed the conduct, although he's a convicted felon, was reasonably necessary to avoid imminent harm or potential harm, and the idea of avoiding somebody reaching for a gun and utilizing it against him or others is -- is a reasonable ordinary standard to prevent harm to himself or harm to others.

. . . .

[E]ven if my client did have the gun on the parking lot walking back out, he didn't employ or use it. He -- He picked it up to keep it from harm being used and that's been raised by Mr. Douglas testimony in the proof.

And my client stayed. Ms. Jeter was shot. Mr. Douglas was shot. My client stayed. He didn't have a gun. He didn't -- Either he took it back in the store or either he dropped it. He got -- He kept it away from the people trying to employ it to use on either himself or somebody else.

He stayed at the scene. The officers searched him. They didn't have a gun. They searched in the vehicle. He didn't have a gun, but he picked it up to keep it away from other -- others doing him or others harm. So, I believe it's been raised by the proof.

The State posited that the instruction was not properly raised by the evidence because there was no proof that the defendant reasonably believed that he was facing imminent bodily injury. The trial court questioned defense counsel in that regard and asked,

I'm reading this defense of necessity, which says, "It is a defense to the offense that (1) the defendant reasonably believed the conduct was immediately necessary to avoid imminent harm."

So, wouldn't that require the Defendant to say that he reasonably believed that he had to pick up the gun in order not to be shot or injured?

. . . .

[L]ooking at the light most favorable to the Defendant, there's still nothing to indicate that he was in reasonable fear of any type of, you know, serious bodily injury at that point. Apparently this tussle or whatever was completed and after the tussle was completed, then that's when the Defendant, according to the testimony, picked up the gun and then walked out of the store . . . .

I mean, I still don't see that there's been any proof presented or reasonable inference that your -- that your client was in fear or had been threatened by a gun. I mean, there's nothing to indicate that he ever got threatened by a gun or that he was placed in fear and had to defend himself by picking up the gun. I mean, there's just no -- no proof to that extent[.]

The trial court ultimately denied the defendant's request for a jury instruction on the defense of necessity, ruling, "I think it's one of those that almost, I mean, I think the Defense has to show that he was in fear or he felt like it was necessary. You know, just to say he picked it up is not really sufficient. So, the motion will be denied."

The Court of Criminal Appeals affirmed the trial court's ruling:

Though Mr. Douglas stated at trial that he saw the defendant and the man with whom he was fighting both reach for the gun, the defendant failed to provide evidence showing the man with whom he was fighting was trying to use the gun at the time. Instead, after the defendant began fighting with another man, he picked up the gun, exited the store holding the gun in his right hand, and continued holding the gun in the area immediately outside of the store. Though related, the subsequent shootings of the defendant's girlfriend and Mr. Douglas were separate events from those at issue here. As such, the defendant has failed to show how picking up the gun dropped

- 6 -

during the fight and walking around with it helped to avoid greater or imminent harm as a shooting still occurred after the initial fight. Accordingly, nothing in the record indicates the defendant's action of possessing the gun in any way delayed or hindered the subsequent violence, and the trial court was correct in finding the evidence produced at trial did not fairly raise the defense of necessity as to the defendant's actions.

*State v. Cole-Pugh*, No. W2017-00469-CCA-R3-CD, 2018 WL 935470, at *4 (Tenn. Crim. App. Feb. 15, 2018).

We granted the defendant's application for permission to appeal pursuant to Tennessee Rule of Appellate Procedure 11(a) to address the following issues:

> 1.     Whether the trial court erred in denying Mr. Cole-Pugh's oral request for a jury instruction on the defense of necessity based on the facts of this case. *See* Tenn. Code Ann. § 39-11-609 and T.P.I. – Crim. 40.05 (19th ed. 2015).  Included within this discussion are the elements of the defense (including "reasonable belief," "immediately necessary," and "imminent harm" etc.); the meaning of these terms; and whether the evidence posed a question of fact for the jury as to whether the defense had been established.

> 2.     Whether Mr. Cole-Pugh waived the issue by failing to make his request for the necessity instruction in writing or whether the trial court had a duty to include such an instruction when the defense is "fairly raised" by the evidence even in the absence of a written request. *See, e.g., State v. Culp*, 900 S.W.2d 707 (Tenn. Crim. App. 1994); *State v. Davenport*, 97[3] S.W.2d 283 (Tenn. Crim. App. 1998); and *State v. Hawkins*, 406 S.W.3d 121 (Tenn. 2013).

*State v. Cole-Pugh*, No. W2017-00469-SC-R11-CD (Tenn. June 22, 2018) (order).  This appeal follows.

## II. ANALYSIS

### A.  Standard of Review

Because questions involving the propriety of jury instructions are mixed questions of law and fact, our standard of review is *de novo* with no presumption of correctness.

*State v. Perrier*, 536 S.W.3d 388, 396 (Tenn. 2017) (citing *State v. Thorpe*, 463 S.W.3d 851, 859 (Tenn. 2015)); *State v. Rush*, 50 S.W.3d 424, 427 (Tenn. 2001).

## B.  Jury Instructions

"An accused has a constitutional right to complete and accurate jury instructions on the law, and the trial court's failure to provide complete and accurate jury instructions deprives a defendant of the constitutional right to a jury trial."  *Cauthern v. State*, 145 S.W.3d 571, 600 (Tenn. Crim. App. 2004).  "In criminal cases, trial courts have the duty, without request, to give proper jury instructions as to the law governing the issues raised by the nature of the proceeding and the evidence introduced at trial."  *State v. Hawkins*, 406 S.W.3d 121, 129 (Tenn. 2013) (citing *State v. Dorantes*, 331 S.W.3d 370, 390 (Tenn. 2011)).  "'[T]he defendant has a right to have every issue of fact raised by the evidence and material to his defense submitted to the jury upon proper instructions by the judge.'"  *State v. Sims*, 45 S.W.3d 1, 9 (Tenn. 2001) (quoting *State v. Thompson*, 519 S.W.2d 789, 792 (Tenn. 1975)).  "A trial court's refusal to grant a special instruction is error only when the general charge does not fully and fairly state the applicable law."  *Hawkins*, 406 S.W.3d at 129 (citations omitted); *see also Perrier*, 536 S.W.3d at 403 (quoting *State v. Faulkner*, 154 S.W.3d 48, 58 (Tenn. 2005)) ("'An instruction should be considered prejudicially erroneous only if the jury charge, when read as a whole, fails to fairly submit the legal issues or misleads the jury as to the applicable law.'").

In Tennessee, our legislature has distinguished between general defenses and affirmative defenses. *Hawkins*, 406 S.W.3d at 129 n.9.  As this Court reiterated in *Perrier*, a general defense

> "need not be submitted to the jury unless it is 'fairly raised by the proof.' Tenn. Code Ann. § 39-11-203(c) (2010).  The quantum of proof necessary to fairly raise a general defense is less than that required to establish a proposition by a preponderance of the evidence.  To determine whether a general defense has been fairly raised by the proof, a court must consider the evidence in the light most favorable to the defendant and draw all reasonable inferences in the defendant's favor.  Whenever admissible evidence fairly raises a general defense, the trial court is required to submit the general defense to the jury.  From that point, the burden shifts to the *prosecution* to prove beyond a reasonable doubt that the defense does not apply."

*Perrier*, 536 S.W.3d at 403 (emphasis added) (quoting *Hawkins*, 406 S.W.3d at 129). Conversely, affirmative defenses require pre-trial notice by the defense and, once fairly

- 8 -

raised, must be proven by the *defendant* by a preponderance of the evidence. *Hawkins*, 406 S.W.3d at 129, n.9. Necessity is one example of a general defense. *Id.*

At issue in the instant case is the trial court's failure to instruct the jury, per the defendant's oral request, on the defense of necessity. Tennessee Code Annotated section 39-11-609 defines the defense of necessity and provides that "conduct is justified if: (1) [t]he person reasonably believes the conduct is immediately necessary to avoid imminent harm; and (2) [t]he desirability and urgency of avoiding the harm clearly outweigh the harm sought to be prevented by the law proscribing the conduct, according to ordinary standards of reasonableness." The general policy behind the defense of necessity contemplates a judgment that an individual acting under conditions that "'a person of ordinary firmness would have been unable to resist or reasonably believing that criminal action was necessary to avoid a harm more serious than that sought to be prevented by the statute defining the offense does not deserve criminal punishment.'" W. Mark Ward, *Tenn. Crim. Trial Practice* § 23:16 (Oct. 2018 update) (quoting *State v. Green*, 995 S.W.2d 591, 606 (Tenn. Crim. App. 1998)). Thus, the statute involves balancing the harm caused by the criminal offense and the harm sought to be avoided. *Id.* "If the harm sought to be avoided was, by ordinary standards of reasonableness, clearly greater than the harm actually caused, the defendant's actions will be justified." *Id.* "The defense of necessity is only available in extremely rare situations in which criminal activity is an objectively reasonable response to an 'extreme' situation." *Id.*

"The need to choose the lesser evil must be both imminent and necessary in the sense that the defendant must have a reasonable belief that there is going to be immediate harm and the only way to avoid the harm is by committing the lesser evil." *Id.* n.2 (citing *State v. Davenport*, 973 S.W.2d 283, 287 (Tenn. Crim. App. 1998)). "'Moreover, necessity requires an immediately necessary action, justifiable because of an imminent threat, where the action is the only means to avoid the harm.'" *Id.* (quoting *Davenport*, 973 S.W.2d at 287).

Within the context of the jury instruction on necessity, some general terms are utilized. "'Imminent' means near at hand [or] on the point of happening." T.P.I.—Crim. 40.05 (22nd ed. 2018). "Ordinary standards of reasonableness" is defined as "the care an ordinary, reasonable, prudent person would have taken under same or similar circumstances." *Id.* Black's Law Dictionary defines "reasonable belief" as "[a] sensible belief that accords with or results from using the faculty of reason." *Black's Law Dictionary* (11th ed. 2019). We are of the opinion that "immediately necessary" is a term that is common with ordinary and prudent people and thus requires no further definition.

- 9 -

Applying these elements to the facts of this case, the defendant became involved in a physical altercation with two men inside of a convenience store, as set forth *supra*. A gun fell from the jacket of one of the men. This man, who was described by an eyewitness as the aggressor, and his friend both grappled with the defendant for the gun, but the defendant reached it first. After the defendant obtained the weapon, the aggressor stood up and ran outside the store. The defendant also arose and walked outside carrying the downward-pointed gun; he never pointed it at anyone. A witness said that when the defendant walked back inside the store and exited again, he did not appear to have possession of the gun anymore. Soon thereafter the witness heard gunshots and discovered that the defendant's girlfriend had been shot by a different armed assailant.

Viewing the evidence in the light most favorable to the defense and drawing all reasonable inferences therefrom, as we must, several reasonable inferences supporting the defense of necessity can be drawn from these facts: (1) a jury could have inferred that the defendant reasonably believed (had a sensible belief that results from using reason) that the conduct (obtaining possession of the firearm) was immediately necessary for him to avoid imminent harm (having the firearm reclaimed by the aggressor and used against him); and that (2) the urgency of avoiding the harm (having the firearm used against him) clearly outweighed the harm sought to be prevented by the law (prohibiting possession of a handgun by a felon). Moreover, the necessity of the situation was further established by the fact that once the original handgun was out of play, a second firearm was brandished and the imminent harm actually occurred. Both the State and the Court of Criminal Appeals maintain that the shooting of the defendant's girlfriend was an event unrelated to the conduct in question. We respectfully disagree. Such a distinction is more appropriate to a determination of the availability of duress as a defense, not necessity.

The defenses of duress and necessity are interrelated. We briefly note that "'[c]ommon law historically distinguished between the defenses of duress and necessity,'" *State v. Green*, 995 S.W.2d 591, 606 (Tenn. Crim. App. 1998) (citations omitted), but that modern cases have tended to blur the traditional distinction between the two, *State v. Bledsoe*, 226 S.W.3d 349, 356 n.5 (Tenn. 2007). The defense of duress is defined as follows:

> Duress is a defense to prosecution where the person or a third person is threatened with harm that is present, imminent, impending and of such a nature to induce a well-grounded apprehension of death or serious bodily injury if the act is not done. The threatened harm must be continuous throughout the time the act is being committed, and must be one from

- 10 -

which the person cannot withdraw in safety. Further, the desirability and urgency of avoiding the harm must clearly outweigh the harm sought to be prevented by the law proscribing the conduct, according to ordinary standards of reasonableness.

Tenn. Code Ann. § 39-11-504(a).

We note one primary difference between the defenses: the defense of duress requires that the "threatened harm must be . . . one from which the person cannot withdraw in safety." *Id.*; *see also State v. Robinson*, 622 S.W.2d 62, 73 (Tenn. Crim. App. 1980) ("The doctrine of coercion or duress cannot be invoked as an excuse by one who had a reasonable opportunity to avoid doing the act without undue exposure to death or serious bodily harm and there must be no reasonable opportunity to escape the compulsion without committing the crime."). The defense of necessity contains no such provision.[4] Nonetheless, one commonality between the two defenses remains: "[u]nder any definition of these defenses . . . [,] if there was a reasonable, legal alternative to violating the law, 'a chance both to refuse to do the criminal act and also to avoid the threatened harm,' the defenses will fail." *United States v. Bailey*, 444 U.S. 394, 410 (1980) (citation omitted).

The defense of necessity was fairly raised by the evidence, and the trial court should have instructed the jury accordingly. The defendant was faced with a situation wherein at least one armed man attempted to engage him in a fight. When a handgun appeared in the middle of the confrontation, the defendant could have risked one of the other men grabbing the gun and using it against him or obtaining possession of the gun himself, in violation of his status as a convicted felon. A reasonable person would have acted in a similar manner. The fact that a shooting occurred very shortly thereafter negates the concept that the conflict was over and that the necessity of the situation had dissipated.

The defense of duress is not at issue in this case. Defense counsel did not request a jury instruction on duress. Had this been at issue, the conclusions of the State and the Court of Criminal Appeals that the subsequent shooting was a separate incident would have been relevant in that the defendant arguably had an opportunity to withdraw after

---

[4] From these facts we infer that defense counsel did not request a jury instruction on the defense of duress because when the defendant walked out of the store the first time, he had an opportunity to safely withdraw from the situation after the initial confrontation. Again, this is not a requirement within the context of necessity.

the initial conflict had ceased and he had exited with the weapon. However, necessity does not require safe withdrawal. Thus, to invoke necessity, the defendant was not required to have ceased his illegal possession of a handgun after the initial necessity manifested.

Assuming *arguendo* that we viewed the entire event as not one but two distinct occurrences, we find it relevant to note that the defendant did not have a method by which to "withdraw" or end his criminal culpability until police arrived on the scene. Certainly returning the weapon to the aggressor or any of his associates was not feasible. The store clerk does not appear to factor in to the altercation, thus, relinquishing the weapon to him was not an option. The most advisable course of action would have been to have surrendered the weapon to a law enforcement officer upon their arrival, but when they arrived, the weapon was no longer present at the scene. The fact that the weapon was never recovered leaves the questions of when and how the defendant lost possession of the handgun unanswered.

In denying the defendant's request for an instruction on necessity, the trial court emphasized that the defendant did not "say that he reasonably believed that he had to pick up the gun in order not to be shot or injured" and that there had been no proof "or reasonable inference that . . . your client was in fear or had been threatened by a gun." In *State v. Edwards*, C.C.A. No. 1127, 1987 WL 28039, at *1 (Tenn. Crim. App. Dec. 17, 1987), during the charge conference, the State argued that the defendant was not entitled to a jury instruction on the general defense of self-defense because he did not testify at trial, and thus, he presented no testimony that he was in fear. *Id.* The trial court declined to instruct the jury as to necessity. On appeal, the Court of Criminal Appeals explained:

> We find no authority for this position, and the cases cited by the parties do not deal with this aspect of the defense. "[If] a party is in real or apparent danger of death or great bodily harm, or believes himself to be so, *as evidenced by the circumstances justifying that belief*, and he, in good faith, under such apprehension [assaults] his adversary" the defense is available.

*Id.* (quoting *Frazier v. State*, 100 S.W. 94, 98 (1906)). The Court of Criminal Appeals reversed the trial court, reasoning that the genuineness of the defendant's fear could be demonstrated by the "circumstances" of the confrontation. *Id.*

We agree with the result reached by the *Edwards* court. The proof to which the trial court alluded in this case is clearly a reference to the defendant's not testifying that he was in fear or that he reasonably believed he had to possess the gun. "[I]n all criminal

- 12 -

prosecutions, the accused . . . shall not be compelled to give evidence against himself." Tenn. Const. Art. 1, § 9; U.S. Const. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself[.]"). Compelling the defendant to waive his right not to give evidence against himself or, instead, to provide evidence of his mental state to secure his constitutional right to a complete jury instruction is an untenable position. For that reason, it is incumbent upon the *court* to "draw all reasonable inferences in the defendant's favor" and not the *defendant* to provide such proof or inferences. *See Perrier*, 536 S.W.3d at 403.

As a final point, we note that the State made no attempt through rebuttal testimony to disprove the defendant's assertion of necessity at trial. The State's only argument against giving the instruction was that the defendant did not testify that he was operating under a reasonable belief that he was facing imminent bodily injury. Once a general defense is fairly raised, it is incumbent upon the State to negate, beyond a reasonable doubt, the application of a general defense. The trial court erred by refusing to instruct the jury on the defense of necessity, and the Court of Criminal Appeals likewise erred in affirming the trial court's decision.

## C. Waiver

Integral to our conclusion in this case is whether defense counsel waived plenary consideration of this issue by failing to file a written request for a special instruction or whether it was incumbent upon the trial court to give such an instruction when the defense is raised by the evidence, regardless of a written request. As noted *supra*, in criminal trials, courts have the duty to give proper jury instructions as to the law governing the issues raised by the proceedings and the evidence, with or without a request from defense counsel. *Hawkins*, 406 S.W.3d at 129 (citation omitted). This obligation extends to general defenses. *Id.*

It stands to reason, therefore, that if a trial court is obligated to give a jury instruction on a general defense, regardless of whether it was requested, the lack of a *written* request does not result in waiver of the issue on appeal. The State concedes this issue in its brief, agreeing that "[t]he defendant's failure to make a written request for a necessity instruction does not constitute waiver." The defendant is entitled to plenary review of this claim of error because he orally requested the instruction on necessity at the conclusion of the trial.

## CONCLUSION

- 13 -

We hold that where the general defense of necessity is fairly raised by the evidence, the trial court is obligated to instruct the jury accordingly, regardless of whether the instruction is requested. A defendant need not testify that he reasonably feared imminent bodily harm; the trial court may draw this inference from the evidence as it is viewed in the light most favorable to the defendant, together with all reasonable inferences therefrom. In addition, a request for a jury instruction on a general defense is not subject to waiver for failure to submit the request in writing. We reverse the judgment of the Court of Criminal Appeals and remand this case to the trial court for proceedings consistent with this opinion. Costs are taxed to the State.

_____
ROGER A. PAGE, JUSTICE