IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs August 1, 2017

## STATE OF TENNESSEE v. MAKA FULLER, JR.

**Appeal from the Circuit Court for Madison County**
**No. 16-111   Donald H. Allen, Judge**

_____

### No. W2016-02480-CCA-R3-CD

_____

A Madison County jury convicted the Defendant, Maka Fuller, Jr., of aggravated robbery. After a sentencing hearing, the trial court sentenced him to eleven years in prison. On appeal, the Defendant contends that the evidence is insufficient to support his conviction because he did not use a weapon to accomplish the robbery. Finding that there is sufficient evidence to support the Defendant's conviction for aggravated robbery, we affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and TIMOTHY L. EASTER, JJ., joined.

George Morton Googe, District Public Defender; and Gregory D. Gookin, Assistant Public Defender, Jackson, Tennessee, for the appellant, Maka Fuller, Jr.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; Jerry Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
### I. Facts

This case arises from a robbery at an automatic teller machine (ATM) in Madison County, Tennessee. For his role in this offense, a grand jury indicted the Defendant for aggravated robbery. At a trial on the charge, the parties presented the following evidence: Zellier Price, the victim, testified that on October 18, 2015, she was at the Regions Bank "a little bit after 6:00 [p.m.]." The victim was at the drive-thru ATM

making multiple withdrawals. She conducted the transactions through her car window while remaining seated in the driver's seat of her car. As she finished her final transaction, the Defendant approached her car and said he was going to rob her. She had earlier noticed the Defendant walking on the sidewalk nearby and was surprised to see him standing by her car window. She recalled the Defendant's mouth was covered, and his right hand was "wrapped up like it was a gun." The victim testified that she believed the Defendant was holding a gun and that she was afraid she would be killed.

The victim testified that the money she had retrieved from the ATM was lying in her lap. The Defendant repeated his intent to rob her and then reached inside the car with his left hand and took the $80.00 that was on the victim's lap. The victim said that, as this occurred, she pressed the accelerator and "crushed [the front bumper of her] car." The victim drove across the street and asked if anyone had witnessed the robbery, but no one had. She notified the police of the robbery and provided a description of the robber.

The victim testified that she was not physically hurt during the robbery but was "shaken up really bad." Once she returned home, she contacted a friend whose nephew worked at the bank. Through him, she learned that the bank had cameras on their ATM. The victim viewed the surveillance footage of the robbery and confirmed that it was an accurate depiction of her interaction with the Defendant.

The surveillance footage depicts the victim conducting transactions at the ATM. The Defendant appears from rear of the vehicle with a white cloth wrapped around his right hand. He sticks the wrapped hand in the car at the victim while covering his face with a shirt with his left hand. The Defendant then reaches in the car with his left hand and appears to grab something and exits toward the rear of the car as the car lurches forward.

On cross-examination, the victim agreed that she told a police officer that the Defendant had something in his hand that he was pointing at her, but she was "not sure" if it was a weapon. She confirmed that she could not tell what the Defendant held in his hand but that it looked like a gun. She agreed that she never saw a gun but that the Defendant was pointing whatever he had in his right hand "acting like it was a gun." On redirect examination, the victim reiterated that, at the time, she believed the Defendant was holding a gun.

Andrew Hackett, a Madison County Sheriff's Office deputy, testified that in October 2015, he was a resource officer at "JCM." He observed the video surveillance footage released by the police department and recognized the robber as a JCM student. Deputy Hackett contacted the assigned investigator on the case and identified the Defendant as the robber in the surveillance video

Nicholas Donald, a Jackson Police Department detective, testified that he spoke with the victim following the robbery. He described her demeanor as "very upset, frantic." He observed that she was "shaking really bad." She provided a description of the Defendant, and the police obtained surveillance footage of the incident. Detective Donald gave the footage to Crime Stoppers who ran the footage on the news. He was later contacted by Deputy Hackett who identified the robber in the footage as the Defendant.

Detective Donald testified that, on October 23, 2015, he interviewed the Defendant with the Defendant's mother present. The Defendant acknowledged his understanding of the *Miranda* rights and signed a rights waiver. The Defendant gave the following statement:

> I was walking back and forth by the Regions Bank on Lafayette St. and N. Highland on Sunday looking for somebody to rob. I had to rob somebody to get out of the gang or they were gonna kill me. I ran up to the car with my polo shirt wrapped around my hand and my white t-shirt wrapped placed [sic] around my face. I got the money out of her lap and ran to the laundry mat. I did not have a gun. Then I caught a ride to Lincoln Courts. I gave to [sic] the money to a guy named PJ and then I went home.

The statement was signed by the Defendant.

The Defendant testified that he was the person on the surveillance video reaching into the victim's car. He denied having a gun. He said that he did not know why he had a shirt on his hand. He stated that he "wasn't thinking at the time." The Defendant expressed remorse for his actions toward the victim.

On cross-examination, the Defendant denied any gang affiliation and said that he lied in his statement to police when he referenced a gang. He said he robbed the victim because he was "young and dumb." The Defendant stated that he wrapped his t-shirt around his hand. When asked why he had done so, he stated, "just young and dumb, wasn't thinking at the time." After watching the surveillance video, the Defendant agreed that he pointed his wrapped hand at the victim.

After hearing the evidence, the jury convicted the Defendant of aggravated robbery. After a subsequent sentencing hearing, the trial court sentenced the Defendant to serve eleven years in the Tennessee Department of Correction. It is from this judgment that the Defendant appeals.

**II. Analysis**

On appeal, the Defendant asserts that the evidence is insufficient to support his conviction because the State failed to prove that the victim had a reasonable belief that the Defendant was armed during the robbery. The State responds that the jury was entitled to accredit the victim's testimony that she believed the shirt wrapped around the Defendant's hand concealed a pistol. We agree with the State.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This Court must afford the State of Tennessee the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000) (citations omitted).

A conviction for aggravated robbery, as relevant to this case, requires proof beyond a reasonable doubt that the Defendant committed an "intentional or knowing theft of property from the person of another by violence or putting the person in fear" and that the robbery was "accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. §§ 39-13-401(a), -402(a)(1) (2014).

The Defendant specifically contends that the evidence did not establish that he used a deadly weapon or any article intended to make the victim reasonably believe he was carrying a deadly weapon. The jury, however, accredited the testimony of the victim and rejected the claim of the Defendant. This court has previously ruled that it is not necessary to display an actual weapon in order to meet the requirements of the aggravated robbery statute. *See State v. Davenport*, 973 S.W.2d 283, 286 (Tenn. Crim. App. 1998) (holding that the evidence was sufficient to support aggravated robbery where the defendant fashioned a rag over his empty hand to lead the store clerk to believe he held a weapon); *see also State v. Monoleto D. Green*, No. M2003-02774-CCA-R3-CD, 2005 WL 1046800 at *9 (Tenn. Crim. App., at Nashville, May 5, 2005). There was proof that the Defendant watched the ATM looking for someone to rob. He waited until the victim retrieved money from the ATM, and then he covered his face with a cloth to disguise himself and fashioned a rag upon his hand in an effort to lead the victim to believe he held a weapon. The Defendant also announced twice to the victim his intent to rob her. The victim stated her belief that the Defendant was armed and her fear that he would shoot her.

- 5 -

Accordingly, sufficient evidence was submitted to the jury to permit them to judge the victim's and the Defendant's credibility and make a determination. A reasonable jury could have found that the elements of aggravated robbery were satisfied in this case. The Defendant is not entitled to relief.

### III. Conclusion

Based upon the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE