FILED

02/28/2018

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs September 7, 2017

**STATE OF TENNESSEE v. DARLENE F. HOTTIMAN**

**Appeal from the Circuit Court for Hardin County**
**No. 16-CR-11      C. Creed McGinley, Judge**

_____

**No. W2016-02077-CCA-R3-CD**

_____

A Hardin County Circuit Court Jury convicted the Appellant, Darlene F. Hottiman, of operating a motor vehicle after having been declared a motor vehicle habitual offender, a Class E felony, and driving on a revoked license, a Class A misdemeanor, and she received an effective four-year sentence to be served in confinement. On appeal, the Appellant contends that the evidence is insufficient to support her convictions due to her defense of necessity; that the trial court made improper comments to an alternate juror, made improper comments about the length of jury deliberations, and made improper comments about plea negotiations during the sentencing hearing; and that the trial court improperly enhanced her felony sentence based upon her prior criminal history and should have granted her request for probation. Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and J. ROSS DYER, J., joined.

Terry Lee Dicus, Jr., Savannah, Tennessee, for the appellant, Darlene F. Hottiman.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Matthew Stowe, District Attorney General; and Vance Dennis, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Factual Background**

Investigator Keith Amos of the Hardin County Sheriff's Department testified that on August 27, 2015, he was driving on 3 Wheeler Lane, which he described as a public

"gravel dirt" road. A gold Ford Explorer was traveling toward him from the opposite direction, and he saw the Appellant driving the vehicle. He said that he knew the Appellant did not have a driver's license, that he turned his patrol car around, and that he activated his car's emergency equipment. The Appellant pulled over, and Investigator Amos approached the Explorer. He asked the Appellant where she was going and if she "did get her license back." She told him that she was "sick" and that she was "going to someone's house for them to take her to the doctor." Investigator Amos "ran" the Appellant's information through dispatch, and dispatch advised him that she had been declared a motor vehicle habitual offender and that her license had been revoked.

Investigator Amos testified that the Appellant gave him consent to search the Explorer, that he searched it for weapons and narcotics, and that he did not find anything. He also searched her purse and found one prescription bottle for fluoxetine, which was a generic version of Prozac, and one prescription bottle for gabapentin. He said that the Appellant was not exhibiting any signs of physical trauma at that time but that she kept telling him she was sick. She did not tell him about any specific illness.

Investigator Amos testified that two other officers arrived and that he told the Appellant he was going to arrest her for "driving offenses." He said that as he was talking to the other officers, he turned around and saw that the Appellant "had opened [the fluoxetine bottle] and poured a handful of pills out attempting to put them in her mouth." The officers removed about ten pills from the Appellant's mouth, and she fell to the ground. Investigator Amos said that he did not know how many pills the Appellant swallowed, so he called for medical assistance "to check her out."

Investigator Amos testified that an ambulance arrived and that medical personnel told him the Appellant was conscious but not responding to them. They transported the Appellant to an emergency room, and she stayed in the hospital overnight for observation. She was released from the hospital the next day, and a police officer arrested her and transported her to jail.

On cross-examination, Investigator Amos testified that he knew the Appellant "from prior arrests" and that she was not speeding, was wearing her seatbelt, and was maintaining her lane of travel when he stopped her on August 27. After the stop, the Appellant kept telling him that she was sick and that she did not want to go to jail. She also told him that she was trying to get someone to take her to the doctor. However, she did not ask for an ambulance and did not tell him that she had a stroke in 2009. After Investigator Amos told the Appellant that she was going to jail, she "attempted to harm herself" by swallowing the pills. She fell to the ground about twenty seconds later. Another officer administered a "sternum rub" to the Appellants' chest, but she was unresponsive. Investigator Amos acknowledged that a sternum rub was painful and that it "would probably wake you up if you were trying to fake."

The Appellant testified in her own behalf that she was fifty-six years old, that she had been declared a motor vehicle habitual offender in 1994, and that she had been unable to get her driver's license reinstated. The Appellant said that in 2009, she was diagnosed with TIA or "mini strokes" and that her symptoms at that time were headaches and dizziness. The Appellant said that on August 27, 2015, she was driving because she was "sick." She explained,

> I had a bad headache and dizzy. I called my cousin[, Cindy Franks, and] asked her would she take me to the hospital, because I felt like I was having a stroke like I did before. And she said, no, come to my house. She told she told me if I could get over there to pick her up she would.

The Appellant telephoned another friend but that friend had a broken leg and could not drive. The Appellant also called her son but was unable to contact him. She said she usually did not drive and was on her way to Franks's house when Investigator Amos stopped her.

The Appellant testified that she did not swallow any medication on August 27 and that "I was going to, but he got it away from me." She denied trying to harm herself and said she told Investigator Amos that she was going to take her medicine because she had not taken it that day. She said that she did not remember receiving a sternum rub and acknowledged that she was driving on August 27 because she thought she was having a medical emergency and needed immediate medical treatment.

On cross-examination, the Appellant testified that Cindy Franks could not come to get her because Franks did not have a car. The gold Explorer belonged to the Appellant's son. The Appellant said she did not dial 9-1-1, and the State asked, "Ms. Hottiman, don't you think it would be reasonable if you were in fear of serious medical problems for you to call 911 and let them come get you and treat you quickly?" The Appellant answered, "Yes, sir, but I couldn't think straight." She acknowledged that she had been declared a motor vehicle habitual offender twenty-two years before trial and that she had received three prior convictions related to driving over the past twenty years. She also acknowledged that she knew she was not supposed to be driving on August 27. She denied trying to swallow "a handful" of pills but acknowledged that several pills may have been in her hand.

On redirect examination, the Appellant testified that she never claimed in prior cases that she was having a stroke. She said that she understood perjury was a felony and maintained that she was driving on August 27 because she thought she was having a medical emergency. The Appellant identified her medical records from 2009 and acknowledged that they showed she became unresponsive then, just like she became unresponsive on August 27, 2015.

At the conclusion of the Appellant's testimony, the jury convicted her as charged of operating a motor vehicle after having been declared a motor vehicle habitual offender, a Class E felony, and driving on a revoked license, a Class A misdemeanor. After a sentencing hearing, the trial court sentenced her to concurrent sentences of four years and eleven months, twenty-nine days, respectively.

## II. Analysis

### A. Sufficiency of the Evidence

The Appellant claims that the evidence is insufficient to support her convictions because the proof is undisputed that she was driving out of necessity. The State argues that the evidence is sufficient because the jury rejected the Appellant's necessity defense. We agree with the State.

When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence, nor will this court substitute its inferences drawn from the circumstantial evidence for those inferences drawn by the jury. Id. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

A guilty verdict can be based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting Marable v. State, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)).

During the final jury charge, the trial court instructed the jurors as follows:

> Included in the defendant's plea of not guilty is her plea of necessity as a defense. It is a defense to the offense charged that number one, the defendant reasonably believed the conduct was immediately necessary to avoid imminent harm. And number two, the desirability and urgency of avoiding the harm clearly outweighed according to the ordinary standards of reasonableness, the harm sought to be prevented by the law prescribing the conduct.
>
> Imminent means near, at hand, or on the point of happening. Ordinary standards of reasonableness means the care an ordinary, reasonable, prudent person would have taken under the same or similar circumstances. If evidence is introduced supporting the defense of necessity, the burden is on the State to prove beyond a reasonable doubt that the defendant did not act out of necessity.
>
> If from all the facts and circumstances, you find the defendant acted out of necessity or if you have a reasonable doubt as to whether she acted out of necessity then you must find the defendant not guilty.

See Tenn. Code Ann. § 39-11-609; T.P.I. - Crim. 40.05. The common law defense of necessity "excuses criminal liability in those exceedingly rare situations where criminal activity is an objectively reasonable response to an extreme situation." Tenn. Code Ann. § 39-11-609, Sentencing Comm'n Comts. "[N]ecessity requires an immediately necessary action, justifiable because of an imminent threat, where the action is the only means to avoid the harm." State v. Davenport, 973 S.W.2d 283, 287 (Tenn. Crim. App. 1998). "For example, the necessity defense would bar a trespass conviction for a hiker, stranded in a snowstorm, who spends the night in a vacant cabin rather than risking death sleeping in the open." Tenn. Code Ann. § 39-11-609, Sentencing Comm'n Comts.

In this case, Investigator Amos testified that he saw the Appellant driving the Explorer and that she was not speeding, was wearing her seat belt, and was traveling within her lane. When he stopped her, she did not mention having a headache, dizziness, or a history of mini strokes. Instead, she kept telling him that she was "sick" and that she did not want to go to jail. The Appellant never requested an ambulance and did not exhibit any physical symptoms of an illness until the officer told her that he was arresting her. At that time, she attempted to swallow a handful of prescription medication, fell to the ground, and became unresponsive. During closing arguments, the State contended

- 5 -

that the only issue in this case was whether "it was somehow necessary for her to break the law." The State noted that the Appellant telephoned several people and argued as follows:

> There's nothing reasonable about getting in a vehicle when you know you're prohibited from driving that vehicle, when you know you've been convicted three different times for driving when you're not supposed to drive, there's nothing reasonable about that when you can pick up the phone and trained medical personnel will come to your aid immediately. Nothing reasonable about that.

The jury heard the evidence and, irrespective of whether it believed the Appellant's claim that she thought she was having a stroke, chose to reject her defense of necessity, as was its prerogative. Accordingly, the evidence is sufficient to support the convictions.

## B. Improper Comments

Next, the Appellant contends that she was denied a fair trial because the trial court made improper comments to an alternate juror at the close of proof, made improper comments about the length of jury deliberations at the close of proof, and made improper comments about plea negotiations during the sentencing hearing. However, the Appellant did not raise any of the issues in her motion for new trial or during the very brief hearing on the motion. Therefore, she has waived them. See Tenn. R. App. P. 3(e).

With regard to the Appellant's claim that the trial court made improper comments about plea negotiations during the sentencing hearing, she contends that the court's statements constitute plain error and require a new trial in front of a different judge. We disagree.

During the sentencing hearing, defense counsel advised the trial court that the Appellant was "extremely fragile," that she had "a number of health issues," and that counsel did not think society would benefit from her being incarcerated. The trial court stated as follows:

> Well, it's not the Court's intent to go into the background of any plea offers, but you said earlier on a particular defendant you had nothing to lose. I believe I would have looked at any potential offers, because this lady had a tremendous amount to lose in promoting a, quote, defense that clearly the jury saw through. As I recall the jury was out a very limited amount of time, and it showed the strength of the State's case.

The Appellant argues that the court's comments "cause[] unnecessary concern as to whether the case was lost before the first witness testified thus depriving the Appellant of her day in court." However, the Appellant received her day in court, having a jury trial and even testifying in front of that jury. The court did not make the comments during the trial or in front of the jury. In sum, nothing indicates that a clear and unequivocal rule of law was breached, that a substantial right of the accused was adversely affected, or that consideration of the error is necessary to do substantial justice. State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994). The Appellant is not entitled to plain error relief.

## C. Sentencing

Finally, the Appellant claims that the trial court improperly enhanced her felony sentence based upon her prior criminal history and should have granted her request for probation. The State argues that the court properly sentenced the Appellant. We agree with the State.

No witnesses testified at the sentencing hearing, but the State introduced the Appellant's presentence report into evidence. According to the report, the Appellant was divorced with two adult children. In the report, the Appellant stated that she was raised in foster homes and that she had a nervous breakdown when her younger brother died in 2009. She described her mental health as "fair" due to her being bipolar and schizophrenic and her physical health as "poor" due to TIA, ulcerative colitis, anemia, thyroid problems, and nerve damage to her back and legs. The report showed that the Appellant dropped out of high school after the tenth grade but that she obtained her GED and became a certified nursing assistant. According to the report, she worked as a certified nursing assistant from 1982 to 1983 and 1987 to 1990 and that she worked as a housekeeper for a hospital from 1987 to 1989. At the time of the report, the Appellant did not work but received $733 per month in disability income. The report showed that the Appellant had the following criminal history: operating a motor vehicle after having been declared a motor vehicle habitual offender in 1996, 2002, and 2013; misdemeanor theft in 2008 and 2009; and five convictions for writing bad checks in 2001.

The trial court found that the Appellant was a Range II, multiple offender and that she was not eligible for alternative sentencing due to her criminal history. The court, listing her ten prior felony and misdemeanor convictions, applied enhancement factor (1), that "[t]he defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range," to her sentence for operating a motor vehicle after having been declared a motor vehicle habitual offender. See Tenn. Code Ann. § 40-35-114(1). The court stated that the Appellant's history of criminal convictions was "significant" and justified the maximum punishment in the range, four years. See Tenn. Code Ann. § 40-35-112(b)(5). The Appellant received a

concurrent sentence of eleven months, twenty-nine days for the conviction of driving on a revoked license.

Appellate review of the length, range, or manner of service of a sentence imposed by the trial court is to be reviewed under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012); see also State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012) (applying the standard to alternative sentencing). In sentencing a defendant, the trial court shall consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the Appellant in her own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the Appellant to demonstrate the impropriety of her sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in § 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c).

Although the trial court should consider enhancement and mitigating factors, the statutory enhancement factors are advisory only. See Tenn. Code Ann. § 40-35-114; see also Bise, 380 S.W.3d at 701; State v. Carter, 254 S.W.3d 335, 343 (Tenn. 2008). Our supreme court has stated that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." Carter, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" Id. at 343. Appellate courts are "bound by a trial court's

decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id. at 346.

An appellant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. See Tenn. Code Ann. § 40-35-303(a). Moreover, an appellant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. See Tenn. Code Ann. § 40-35-102(6). Tennessee Code Annotated section 40-35-103(1) sets forth the following sentencing considerations which are utilized in determining the appropriateness of alternative sentencing:

> (A)  Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

> (B)  Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

> (C)  Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

See also State v. Zeolia, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996). Additionally, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." Tenn. Code Ann. § 40-35-103(5). A defendant with a long history of criminal conduct and "evincing failure of past efforts at rehabilitation" is presumed unsuitable for alternative sentencing. Tenn. Code Ann. § 40-35-102(5).

The Appellant contends that the trial court should not have enhanced her felony sentence based upon her three prior convictions of operating a motor vehicle after having been declared a motor vehicle habitual offender because the trial court also used the three convictions to classify her as a Range II, multiple offender. We agree in part with the Appellant. A defendant qualifies as a multiple offender if he or she has a "minimum of two (2) but not more than four (4) prior felony convictions within the conviction class, a higher class, or within the next two (2) lower felony classes." Tenn. Code Ann. § 40-35-106(a)(1). Here, the Appellant had three convictions of operating a motor vehicle after having been declared a motor vehicle habitual offender, a Class E felony. Two of those convictions were sufficient to establish her as a multiple offender. The remaining conviction and her seven misdemeanor convictions justified the application of

enhancement factor (1). The Appellant contends that her misdemeanor convictions should be "somewhat mitigated" by the fact that she survives on just $733 per month. However, the 2005 amendments to the 1989 Sentencing Act "deleted as grounds for appeal a claim that the trial court did not weigh properly the enhancement and mitigating factors." Carter, 254 S.W.3d at 345.

Regarding the trial court's denial of probation, we initially note that as a Range II, multiple offender, the Appellant was eligible for alternative sentencing but not considered a favorable candidate for alternative sentencing. Moreover, the trial court's comments demonstrate that it was greatly troubled by the Appellant's likelihood to reoffend and her lack of potential for rehabilitation. During the sentencing hearing, the trial court stated, "She'll be trying [to drive] as soon as she gets out the door, claiming some other excuse I guess. Look at her history[.]" The court also stated that the Appellant "poses a threat to the public given her prior history as well as her continual disregard of conforming her conduct to the requirements of the law." Given the court's finding that confinement was necessary to protect society from the Appellant and that she lacked potential for rehabilitation, the court properly ordered that she serve her sentences in confinement.

### III. Conlusion

Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

_____
NORMA MCGEE OGLE, JUDGE