IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 29, 2020

## STATE OF TENNESSEE v. RAMELL MARTEZ JACKSON

**Appeal from the Circuit Court for Tipton County**
No. 9809      Joe H. Walker, III, Judge
_____

### No. W2020-00537-CCA-R3-CD
_____

Ramell Martez Jackson, Defendant was convicted after a jury trial of theft of property, possession of drug paraphernalia, possession of marijuana with intent to deliver in a drug free zone, and possession of a firearm during the commission of a dangerous felony. Defendant received an effective sentence of five years. Defendant filed a motion for new trial which was denied by the trial court. After a thorough review of the record, we affirm the judgments of the trial court.

**Tenn. R. App. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

John P. McNeil and Claiborne H. Ferguson (on appeal), Memphis, Tennessee, and Vicki L. Green (at trial), Millington, Tennessee, for the appellant, Ramell Martez Jackson.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Mark E. Davidson, District Attorney General; and James W. Freeland, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

*Facts and Procedural Background*

Defendant was indicted by the Tipton County Grand Jury of one count of theft of property, one count of possession of drug paraphernalia, one count of possession of a one-half ounce or more of a Schedule VI drug with intent to deliver in a drug free school

zone, and one count of possession of a firearm during the commission of a dangerous felony.

At trial, Michelle Adams testified that she purchased a Smith and Wesson handgun that she had since reported stolen.[1]  Ms. Adams presented the receipt and serial number of the gun she purchased.  She denied that Defendant had her permission to possess her gun.

Brighton Police Department Officer Johnathan Max testified that he was working the night shift on March 26, 2018.  Around midnight, he observed a car being driven by Defendant with a broken taillight and no light illuminating the license plate.  The car was travelling northbound on Highway 51.  Officer Max testified that prior to the stop, he did not know Defendant.  When Officer Max approached Defendant's car, he noticed a "heavy, fruity smell, what they call a masking odor," and described the odor as "really strong, like really strong."  Officer Max stated that in his experience as a law enforcement officer such masking odors are used to disguise the smell of marijuana.

Officer Max learned that the vehicle was owned by Defendant's father.  Officer Max asked for Defendant's driver's license and insurance information as well as the passenger's identification.  Officer Max determined that neither occupant of the vehicle had outstanding criminal warrants for their arrest and that Defendant's driver's license was valid.  Officer Max noticed "several cell phones in the vehicle."  He asked Defendant "if there was anything illegal in the vehicle."  After he told Defendant that if "it's just a little bit of marijuana, it's not that big a deal," Defendant reached in the center console and grabbed a bag of marijuana.  Officer Max told Defendant to put the marijuana back in the console and to step out of the vehicle.  Officer Max called for backup and Atoka Police Department Officer West[2] responded.  Officer West escorted Defendant towards Officer Max's police car, and Officer Max approached the passenger.  Officer Max saw the passenger throw what "appeared to be a bag of marijuana over the back seat."

The passenger presented two driver's licenses with different names from two states.  One driver's license identified the passenger as Alicia Pompey, the other as Alicia Crisp.[3]  After removing Ms. Pompey from the car, Officer Max searched the car and found a set of digital scales, four sandwich bags, two bags of what was later identified as marijuana, and a gun.  Officer Max found only two dollars in Defendant's wallet.  Officer Max testified that the lack of money could have simply been because the drugs had not yet been sold.  Officer Max also noticed several "blunts" and a marijuana cigar in the car.

---

[1] There is nothing in the record as to the date the gun was reported stolen.
[2] Officer West's first name is not in the record.
[3] We will identify the passenger by Ms. Pompey.

When Officer Max found the gun, Defendant told him that it belonged to him and that it was not stolen. Officer Max ran the gun's serial number through a database and learned that the gun had been reported stolen from Lauderdale County. The information on the stolen gun matched the serial number, make, model and caliber of the gun found in Defendant's car.

Officer Max testified that he weighed the marijuana at the scene and it weighed slightly less than eighteen grams. He noted that when the Tennessee Bureau of Investigation, "TBI," weighed the same marijuana it weighed over fourteen grams, or slightly more than one-half ounce. Officer Max accounted for the difference in weight to a loss of moisture content in between the time he weighed the marijuana and TBI weighed it. He testified that the amount of marijuana could be further divided and sold as a "nickel bag" for five dollars or a "dime bag" for ten dollars. Based on his experience, the empty sandwich bags and the digital scales would be used to further divide the marijuana for resale. When Officer Max "asked [Defendant] had he been hustling," Defendant responded "yes." Officer Max noted that in this context the term hustling is used instead of drug dealing.

Officer Max testified that the direction Defendant was driving would have taken him past Brighton High School or Brighton Elementary School. Once Officer Max signaled Defendant to pull over, Defendant stopped in front of Brighton High School. At the time Officer Max pulled Defendant's car over, he did not know about the drugs but only the traffic violation. Officer Max testified that Defendant "stopping the car at that particular location doesn't really change the fact that the car and those drugs were within 1[]000 feet of a school."

On cross-examination, Officer Max testified that when Defendant reached into the console, Officer Max saw two bags of marijuana. Officer Max stated that Defendant possessed both bags and Ms. Pompey later took one of the bags and threw it.

TBI Special Agent Rachel Strandquist was recognized as an expert in drug analysis. She identified the substance seized from Defendant's car as 14.57 grams of marijuana. Agent Strandquist confirmed that marijuana is a Schedule VI substance. She further explained that a "half an ounce is 14.175 grams, so this was over half an ounce."

Defendant's father, Thomas Jackson, testified that he was the owner of the car that Defendant was in when he was stopped. Mr. Jackson testified that approximately two weeks earlier Defendant had been pulled over by Munford police officers. Mr. Jackson went to the scene of the stop and observed an officer check the gun and return it to Defendant when it did not come back as stolen. Mr. Jackson testified that he did not know Ms. Pompey. Mr. Jackson was aware that his son had a "pretty bad" problem with

smoking marijuana.  Mr. Jackson stated that since Defendant's arrest, Defendant had been clean and gotten a good job.

Defendant's mother, Meranda Moore, testified that she too observed the Munford police check Defendant's gun and give it back to him.  She stated that Defendant had a marijuana problem but had gone "to rehab" and that he no longer had a problem.  Ms. Moore testified that she met Ms. Pompey in the hospital when Defendant's brother had a child.  Ms. Pompey was the maternal grandmother to the child.  Although she had met Ms. Pompey, she "didn't actually know" her.

Defendant testified that he purchased the gun from "his guy," "Dolo," in Tipton County.  Defendant had been assured by Dolo that the gun was not stolen.  Defendant testified that when the Munford police stopped him previously, the weapon was given back because it had been determined that it was not stolen.

Defendant explained that on the night of his arrest by Officer Max he had been at home when Ms. Pompey messaged him.  Ms. Pompey invited him to come over, and he drove to Covington to pick her up.  Ms. Pompey "called a couple people, was trying to get marijuana."  Defendant testified that a relative gave him "a guy name Pookie" that lived in Frayser.  Pookie sold Defendant one-half ounce of marijuana for forty dollars.  Defendant testified that he "cash apped" the money to Pookie.  At the time of purchase, Defendant asked Pookie for an extra empty bag to divide the marijuana between Defendant and Ms. Pompey.  Pookie "gave me a handful of bags, and [Defendant] grabbed it quickly" and drove off.  Defendant stopped by a convenience store and purchased a digital scale to divide the marijuana.  He weighed the marijuana and put half in one bag and half in another.

Defendant testified that on their way back to Ms. Pompey's residence in Covington they decided to stop at McDonald's on Highway 51.  Defendant observed the police car as he drove past the Paradise Grill.  Defendant testified:

> So let's say from that grill to Brighton High School it's about a mile.  So [Officer Max] let me at least get three-quarters of a mile down before he sped up and turned on his lights.  And that's just where I stopped at, in from for Brighton Middle—I mean, Brighton High School.  I mean, if I would have—if he would have if I would have passed it, he would have stopped me by the Brighton Bank or something.  That's just where he stopped me at.

- 4 -

Defendant testified that he was nervous because he had been smoking marijuana. Ms. Pompey sprayed "some perfume stuff" that "even choked [Defendant] out." Defendant stated that when asked if there was any marijuana, he hesitated at first but then opened the console and attempted to hand the marijuana to Officer Max. Officer Max then told Defendant to put the marijuana back and step out of the car. Defendant testified:

> So I got up out the car. Well, [Officer Max] told me if it's just a little marijuana [Officer Max] would work with me. So that kind of made me safe. I'm like, well, my gun clean. That the reason why I didn't state the gun, but I knew [Officer Max] was going to find it anyway. So I was like, my gun is clean. So just a little weed, just probably a citation. I'll go to court. [Officer Max would] make me stomp on it or whatever.

Defendant then testified that the bag Ms. Pompey threw into the back seat was in her possession the entire time. It was not in the center console because they had already divided it.

Defendant denied any intention to sell the marijuana. He said his only intention was to smoke it. Defendant estimated that the marijuana would last him about three days.

Defendant stated that after his arrest, he realized that marijuana was "the thing in my life that's destroying it." Defendant sought treatment and worked for his father while "in rehab." He testified that he now worked as a welder and had been promoted to manager. He mentored students and warned them not to make the mistakes he had made.

Defendant testified that when Officer Max stopped him, Ms. Pompey had been smoking marijuana in the car. He testified that he did not know the gun was stolen and only found out the night of his arrest.

On cross-examination, Defendant stated that he did not know that Ms. Pompey had driver's licenses from two states. He "didn't care to get in her personal business." Defendant stated that he had not had contact with Ms. Pompey since she "threw her marijuana in my back seat." Defendant stated that he did not "feel like [he] need her in my case because she threw marijuana in my case so - - I mean, threw marijuana in my back seat. When she did that, she notified me she was going against me." Defendant testified that Ms. Pompey tried to "plant" the marijuana on him. Defendant admitted that he and Ms. Pompey had purchased the marijuana together.

Defendant testified that he did not go to a gun store to buy a gun because he could not afford to do so. He reached out to a relative that gave him Dolo's name. He did not know Dolo's actual name, so Dolo could not be identified or subpoenaed. Defendant

testified that "[l]ike you never know what you buy.  You can buy a TV from someone that they post on the Facebook Market.  You won't know it's stolen until a situation happens."

The jury found Defendant guilty on all counts.  Defendant received a total effective sentence of five years.  Defendant filed a motion for new trial.  The trial court found that the proof was sufficient to support the convictions and denied Defendant's motion for new trial.  Defendant timely filed a notice of appeal.

*Analysis*

*I.  Sufficiency of Evidence*

Defendant argues that the evidence presented at trial is insufficient to support his conviction for possession of marijuana with intent to deliver within 1000 feet of a drug free zone.  Defendant does not challenge the sufficiency of the evidence with regard to his remaining convictions.  The State argues that the evidence is sufficient.  We agree with the State.

Well-settled principles guide this Court's review when a defendant challenges the sufficiency of the evidence.  A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt.  *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992).  The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction.  *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).  The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt.  *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  On appeal, "the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003).  As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof.  *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).  We may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts.  *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).  "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'"  *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Tennessee Code Annotated section 39-17-415(a)(1) classifies marijuana as a Schedule VI controlled substance. It is an offense for a defendant to knowingly possess "not less than one-half (1/2) ounce (14.175 grams) nor more than ten pounds (10 lbs.) (4535 grams) of marijuana." T.C.A, § 39-17-417(a)(4), (g)(1). "Delivery" is defined as the actual, constructive, or attempted transfer of a controlled substance from one person to another. *Id*. § 39-17-402(6). A person "acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." *Id*. § 39-11-302(b). Intent to deliver may be inferred "from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." *Id*. § 39-17-419. Possession of one-half ounce or more of marijuana is a Class E felony. *Id*. § 39-17-417(g)(1). When a person possesses one-half ounce or more of marijuana with intent to deliver "within one thousand feet (1,000') of the real property that comprises a public or private . . . secondary school, . . . [the person] shall be punished one (1) classification higher than is provided in [section] 39-17-417(b)-(i) for such violation." *Id*. § 39-17-432(b)(1).

Here it is clear that Defendant knew he was in possession of more than one-half ounce of marijuana. Defendant testified that he purchased the marijuana for forty dollars. Defendant admitted to purchasing the digital scales to weigh the marijuana. Defendant admitted that his intent was to give half of the marijuana to Ms. Pompey. Officer Max testified that he observed both bags of marijuana in the center console. Officer Max found the digital scale and additional bags that suggested the marijuana would be further divided for resale. Both Officer Max and Agent Strandquist testified that the weight of marijuana exceeded one-half ounce. Both Defendant and Officer Max testified that Defendant stopped his car in front of Brighton High School.

Based on the proof, the evidence is sufficient to sustain Defendant's convictions. Defendant is not entitled to relief.

## II. Jury Instructions

Defendant argues that the trial court erred by instructing the jury on criminal responsibility. The State argues the trial court properly instructed the jury. We agree with the State.

"[A] defendant has a right to a correct and complete charge of the law," *State v. Farner*, 66 S.W.3d 188, 204 (Tenn. 2001), and the trial court has the duty to give "a complete charge of the law applicable to the facts of the case." *State v. Davenport*, 973 S.W.2d 283, 287 (Tenn. Crim. App. 1998). Tennessee law, however, does not mandate

that any particular jury instructions be given, so long as the trial court gives a complete charge on the applicable law. *See State v. West*, 844 S.W.2d 144, 151 (Tenn. 1992). A charge is prejudicially erroneous "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." *State v. Hodges*, 944 S.W.2d 346, 352 (Tenn. 1997) (citing *State v. Forbes*, 918 S.W.2d 431, 447 (Tenn. Crim. App. 1995); *Graham v. State*, 547 S.W.2d 531 (Tenn. 1977)). Whether the trial court properly instructed the jury is a mixed question of law and fact. *State v. Thorpe*, 463 S.W.3d 851, 859 (Tenn. 2015); *State v. Rush*, 50 S.W.3d 424, 427 (Tenn. 2001). Accordingly, the standard of review is de novo with no presumption of correctness.

Here, Defendant objected to the inclusion of criminal responsibility in the jury instructions. The State argued that Defendant and Ms. Pompey shared "a common enterprise and a common goal." After a recess to consider the question, the trial court included the jury instruction. Defendant testified that he and Ms. Pompey purchased the marijuana together. Defendant testified that Ms. Pompey sprayed perfume to mask the odor of marijuana. Officer Max testified that Ms. Pompey took possession of one of the bags he had seen in the console when she took the bag and threw it into the back seat.

The evidence at trial clearly shows that Defendant and Ms. Pompey were both engaged in the criminal enterprise. The trial court properly instructed the jury on criminal responsibility. Defendant is not entitled to relief.

### III. Prosecutorial Misconduct

Defendant claims that the State committed prosecutorial misconduct. Specifically Defendant argues that the State improperly compared Defendant to a character in the movie "Scarface" during closing argument. Defendant further argues that the State improperly "shifted the burden of proof and constantly mislead the jury" about Ms. Pompey. Defendant requests plain error review of those issues. The State argues that Defendant is not entitled to relief. We agree with the State.

Appellate review generally is limited to issues that a party properly preserves for review by raising the issues in the trial court and on appeal." *State v. Minor*, 546 S.W.3d 59, 65 (Tenn. 2018). However, Tennessee Rule of Appellate Procedure 36(b) allows this Court to take notice of plain errors that were not raised in the trial court. *See State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994).

### 1. Closing Argument

Defendant argues that the State improperly compared Defendant to a character in the movie "Scarface" during their closing argument. The State argues that Defendant has waived this issue because Defendant did not object during the State's closing. *See State v. Jordan*, 325 S.W.3d 1, 57-58 (Tenn. 2010). We agree with the State that plenary review of the argument has been waived. Further, Defendant has not established that an unequivocal rule of law that has been breached. *See Smith*, 24 S.W.3d at 282. Defendant is not entitled to plain error relief.

## 2. *References to Ms. Pompey*

Defendant argues that the State "improperly shifted the burden of proof and constantly misled the jury" about Ms. Pompey. Defendant further argues that the State improperly referred to a missing witness. The State argues that Defendant did not object at trial about the State's reference to a missing witness or improper statements about Ms. Pompey. The State further argues that Defendant argues for the first time on appeal that the State attempted to shift the burden of proof. The State argues, therefore, that the issues are waived. We agree with the State.

### a. *Missing Witness*

Defendant argues on appeal that the State violated the rule set forth in *Delk v. State*, 590 S.W.2d 435 (Tenn. 1979), which requires that prior to commenting on a missing witness, the evidence in the record must show that the witness had knowledge of material facts, a relationship existed between the witness and the party that naturally inclined the witness to favor the party, and the missing witness was available to be subpoenaed to attend court. Defendant further argues that the State engaged in burden shifting by repeatedly asking Defendant why he did not subpoena Ms. Pompey to appear in court. The State argues that the issue is waived. We agree with the State.

Defendant made an objection, but only in reference to "facts not in evidence", not to the State's inference of a missing witness during the trial. *See Jordan*, 325 S.W.3d at 57-58. Although Defendant did not object, we will look to see if the issue requires plain error relief. Regarding the *Delk* requirements, Ms. Pompey had knowledge of material facts, and she had a relationship with Defendant that would incline her to favor Defendant. Nothing in the record suggests that she was available to the process of the court for trial or that the State sought an advance ruling from the trial court before referring to the missing witness. As such, the State made an improper argument regarding a missing witness because the proper foundation was not established. *See Delk,* 590 S.W.2d at 440. However, the evidence clearly established that Defendant purchased more than one-half ounce of marijuana and that Defendant had digital scales and bags for the measurement and repackaging for resale. The evidence further shows

Defendant's intent to deliver marijuana to Ms. Pompey. Consideration of plain error is not necessary to do substantial justice because the evidence was sufficient to convict Defendant without the State's reference to Ms. Pompey as a missing witness. *See Smith*, 24 S.W.3d at 282. Defendant is not entitled to plain error relief on this issue.

### B. Misleading Statements

Defendant argues that the State repeatedly made improper and prejudicial statements regarding Ms. Pompey's age, character, whereabouts, and identity. The State argues that no objection was made, and the issue is waived. We agree with the State.

Defendant admittedly did not enter any "contemporaneous objections to the constant prejudicial references and comments about Ms. Pompey." *See Minor*, 546 S.W.3d at 65. However, Defendant asks for plain error review. Defendant has not established that a clear and unequivocal rule of law was breached. *See Smith*, 24 S.W.3d at 28. Defendant is not entitled to plain error relief.

### IV. Cumulative Error

Defendant argues that the cumulative effect of the errors in this case warrant relief. Our supreme court has described the cumulative error doctrine as follows:

> The cumulative error doctrine is a judicial recognition that there may be multiple errors committed in trial proceedings, each of which in isolation constitutes mere harmless error, but which when aggregated, have a cumulative effect on the proceedings so great as to require reversal in order to preserve a defendant's right to a fair trial.

*State v. Herron*, 461 S.W.3d 890, 910 (Tenn. 2015) (quoting *State v. Hester*, 324 S.W.3d 1, 76-77 (Tenn. 2010)). Because cumulative error requires the finding of more than one error, Defendant is not entitled to relief.

### Conclusion

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
TIMOTHY L. EASTER, JUDGE